JUDGE ROWAN
delivered the opinion of the court.
The sheriff of Bourbon county seized and sold the tract of land on which Kenny resided, by virtue of sundry executions in the names of Marsh and others, against the said Kenny, amounting in all to the sum of $400 50. Marsh became the purchaser at the sheriff’s sale aforesaid, and supposing that the hundred acres of which the tract consisted, was worth more than the $400 50, the price at which he purchased it, and willing that Kenny should have the land, if he would pay the money for which it had been sold, at and within the times, at and within which, he had become liable by his purchase to pay it, executed to Kenny the following bond, and received a conveyance for the land from the sheriff:
“Know all men by these presents, that I, Beall Marsh, &c. August 28th, 1815. The condition of the above obligation is such, that whereas Hiram M. Bledsoe, a deputy sheriff of Bourbon county, by virtue of an execution in favor of said Marsh, and also of sundry executions in favor of others, has this day sold the farm on which the said J. Kenny now lives, being all the interest he claims under the will of his father, James Kenny, deceased, on which said John Kenny now resides, and the said Beall Marsh has become the purchaser, at the sum of $400 50 cts., and is about receiving a sheriff’s deed, conveying the title of the said land: And, whereas, the said Beall Marsh, supposing he has purchased the said land for less than what its real *47 value may be when sold at private sale, and willing to give said John an opportunity to redeem the same at the same price and rates, still retaining the until he is indemnified: Now, if the said John Kenny shall, within due time, first pay to the sheriff the money which is immediately due, and shall also pay and discharge the money still becoming due, on the bond due at three months’ credit, when they shall be demanded, or shall furnish the said Marsh in due time with money to do so, and shall also, on reasonable time, pay and discharge the money due on the execution in favor of the said Marsh himself, and on said John Kenny’s paying and discharging said demands, he, the said Marsh, shall release and convey back to the said John Kenny the title of said lands, so as to revest said Kenny again with his title, without recourse to said Marsh, at the proper expences of the said Kenny, then this obligation to be void, otherwise to remain in full force and virtue in law.”
On the 5th of February, 1816, Kenny paid to Marsh $390, and, therefor, obtained the following receipt:
“Received, in Paris, of Mr. John Kenny, $390, in part of the money that I paid to the sheriff for said Kenny, in paying for his land. 5th February, 1816.”
And on the 5th day of April, 1816, he paid him the further sum of $38 97 cts. and obtained therefor the following receipt:
“Received of John Kenny $38 97, the full amount of sundry executions, that I paid to the sheriff of this county, in consequence of the purchase that I made of said Kenny’s land at public sale, and all other monies that I paid for said Kenny. 6th April, 1816.”
Marsh had paid the amount of the executions, as they severally became due, long anterior to his receipt of either of the above sums from Kenny. Kenny prayed a decree against Marsh for a conveyance of the land, and also for spoliations made thereon by Marsh. Marsh insisted that the conditions of his bond to Kenny had, in no one particular, been complied with by the said Kenny, that having been compelled to raise and advance the amount of the executions in money, by the sale of a negro and a sacrifice in his price, he felt absolved from his obligation aforesaid: But, that he agreed by parol with said Kenny, that he would retain 20 acres of the land, receive the money which he had paid out upon the executions aforesaid, and $100 in addition thereto, as an indemnity for his sacrifices and troub *48 le, and that he would convey the balance of the said tract to Kenny: to which, he avers, the said Kenny agreed. He farther states, that the money paid by the said Kenny to him, and receipted for by him, was after, and in pursuance of the said parol agreement, and not of his written obligation aforesaid; and that, in accordance with the said parol agreement, he caused logs to be cut for the erection of a double cabin upon the aforesaid twenty acres, within the agreed boundaries thereof, which cutting is the spoliation complained of by the said Kenny: That the boundaries of the said twenty acres were shewn by the said Kenny to his agent who cut the logs, and that the cutting of the house logs was with the knowledge of the said Kenny, and with his assent: But, that, as soon as he obtained the last of the two aforesaid receipts, which he wrote himself, and to which be fraudulently obtained the signature of the said Marsh, when he was in a state of inebriation, he threw down so much of the cabins as had been builded, drove off his agent, and commenced suit for the whole of the land.
A purchaser of lands at a sheriff's sale under execution, giving his obligation to restore the title on certain conditions, is not bound to do so, unless the conditions are strictly complied with—Such bond does not place the defendant in execution in the attitude of a mortgagor, or entirim, at any time, to redeem on the repayment of the money with interest.
The court below sustained the statement of Marsh, and decreed a conveyance of the remaining eighty acres to Kenny, from which decree be appealed.
The proof in the cause, as to some of the facts, is conflicting and contradictory. The weight of evidence is, however, we think, decidedly in favor of the statement of Marsh. The appellant’s counsel insists that the transaction, in any view, of it, must be considered as a mortgage by Kenny to Marsh—and viewed as a mortgage, the right to redeem remains unimpaired by the parol agreement and subsequent conduct of the parties: That, if it be not formally and technically a mortgage, it is virtually one, and according to the rule in chancery, the money with interest thereon, is equity, and all that could be demanded by Marsh, is the mortgage in this case—that, that has been paid—and if not all paid, the court should have decreed the payment of the balance, and thereupon a conveyance to the complainant, of the entire tract.
When the execution in this case came to the hands of the sheriff, it fastened eo instante upon the land, and held it, subject to the payment of its amount. When the land was sold by the sheriff, the right thereto vested absolutely in the purchaser. When it was conveyed by the sheriff to the purchaser, the conveyance was absolute and unconditional, and had relation back to the time when the execu *49 tion came to the hands of the sheriff, so as to overreach all mesne conveyances.
If, after the conditions of the bond for the reconveyance had been broken, the parties modify those conditions by parol, such parol agreem’nt should be decreed; it is no infringement of the statute of frauds; it is only resisting a demand by setting up a parol agreement.
If, by the sale and conveyance made by the sheriff, Marsh was invested with the absolute right and title to the land, it is difficult to comprehend how Kenny could mortgage it. Kenny, from the moment the land was sold by the sheriff, had neither right nor title to dispose of it in any way: He could not sell or mortgage: He might purchase it: The land could be mortgaged by Marsh only: It is not pretended that Marsh mortgaged it; still less can it be pretended that Kenny mortgaged it to Marsh. The bond of Marsh must then be considered, as it really was, a voluntary obligation—an obligation voluntarily executed (without good or valuable consideration) by Marsh to Kenny, binding him to convey the land, upon condition that the amount therein mentioned, should be paid within the times therein specified—the condition was in no particular complied with—and Marsh, upon Kenny’s failure to comply with the condition, was under no obligation, legal or moral, to convey the land—the right of Kenny to demand a conveyance of the land, under the written obligation of Marsh, having been forfeited, by his failure to comply with the conditions thereof, it rested with Marsh to determine whether he should have the whole or any part of the land, and upon what terms. We think it is sufficiently proved, that Marsh agreed to receive the monies which he had advanced, to retain 20 acres of the land, as an indemnity for the sacrifices he had sustained in raising the monies, and to release the forfeiture as to the remaining eighty acres. Under this agreement, we are satisfied from the proof, the money was paid by Kenny to Marsh, and the cabin logs cut by Marsh. We think it, moreover, strongly inferable from the proof, that the failure of Kenny to comply with the conditions on his part, constrained Marsh to incur sacrifices for which he was entitled to indemnity. We cannot say, nor is it our duty to do so, whether the 20 acres forms an excessive or deficient indemnity. We believe it was competent for the parties to make the parol agreement, and that so far as it is insisted upon by Marsh and affirmed by the court below, it is not impugned by the statute of frauds. Marsh is not demanding a conveyance of land upon a parol agreement: He is resisting a demand for a conveyance, upon an agreement of that sort; which is not forbidden by that statute. The decree of the court below must be affirmed with costs.
In the construction of wills, ambiguities are patent or latent: the former exists when the intention of the testator is dubious; the latter exists where the intention is certain, but the object on which the intention is to act is uncertain—in explaining a patent ambiguity, the will alone is to be resorted to, whilst in the latent class, evidence dehors the will may be called in aid of the will.
By a devise to his daughter Polly of the slaves the testator put in her possession, a slave hired by the year to her husband, does not pass.
Bibb for appellants, Hardin for appellees.