SWIFT AND WIFE
*vs*
WILEY.

*Buckner* for appellant: *Harlan and Fox* for appellees.

---

CHANCERY.

## Swift and wife *vs* Wiley.

*Case* 40.

APPEAL FROM THE LOUISVILLE CHANCERY COURT.

*Proof of wills.   Attestation and subscribing witnesses. Evidence.*

*December* 14.

CHIEF JUSTICE ROBERTSON delivered the Opinion of the Court.

The case stated.

A PAPER purporting to be the last will of *John Wiley* of *Missouri*, and devising real and personal estate in *Kentucky* as well as in *Missouri*, to his brother *James Wiley*, having been admitted to record in the proper court of probate in the latter state, the appellants, as heirs and distributees of the said *John*, filed their bill in the Court of *Chancery* of *Louisville*, (in which city so much of the real estate in Kentucky lies, as is embraced

in the testamentary paper,) charging fraud in the execution, and also denying any publication according to the statute of this state, and therefore, praying for a partition and distribution of the property here, conformably with our local law.

After the institution of this suit, and during its pendency, the testamentary document was recorded in the clerk's office of this Court, according to the provisions of the act of 1820, (*Statute Law*, 1548.)

*James Wiley* having, in his answer, denied the material allegations of the bill, the *Chancellor*, on a final hearing, there being no proof of fraud, decreed an absolute dismission of it; and conceding, as was decided in *Sneed* vs *Ewing and wife*, (4 *J. J. Mar.* 460,) that the real estate in *Louisville*, (which must pass according to the law of the *situs* and as to which the Probate Court of *Missouri* had no jurisdiction,) gave cognizance of this case to the Chancellor—only one question is left for revision by this Court, and that is, whether the evidence proves a publication, according to the law of Kentucky.

The statute of this state of 1797, (*Stat. Law*, 1537–8,) prescribing the mode of devising real estate, contains the following provision: ''so as such last will and testament ''be signed by the testator or testatrix, or by some other ''person in his or her presence, and by his or her direc- ''tion; and moreover, if not wholly written by himself ''or herself, be *attested* by two or more competent wit- ''nesses, *subscribing* their names in his or her presence.''

The controverted paper in this case, though not written by the testator, was dictated by him, when he was perfectly rational, in *St. Louis, Missouri*, during the night immediately preceding his death ; was read to and approved by him, and attested by *William Shenstone Gardner* and *William McDonald*, who then subscribed their names as witnesses, in his presence and at his request, and, some hours afterwards, was subscribed with the testator's own name, written by himself, and then again attested also by his attending physician, *William Beaumont*, at his request and in his presence, as well as in that of the said *Gardner and McDonald*, who, *still remain-*

One subscribing witness to a will may prove the attestation of all others, and if he prove the attestation of a sufficient number of witnesses, in presence, and at the request of the testator, it will authorize the presumption of publication and signature, before or at the moment of attestation.

*ing with him, then again acknowledged their respective signatures as subscribing witnesses.*

The transcript of the record from *Missouri*, shows that the probate there was on the sole testimony of the subscribing witness *Gardner*, who proved that both *McDonald* and himself had subscribed their names as witnesses, in the presence and at the request of the testator, but did not state that the name of the testator was not previously subscribed. According to the judicial expositions of our statute, these facts, in the absence of any other, would be sufficient to establish the will, for it is well settled by this Court, 1st, That one subscribing witness alone, may prove the attestation of all who subscribed their names as witnesses, and 2ndly, That proof of the single fact, that the requisite number of witnesses subscribed their names, as such, in the presence and at the request of the testator, will authorize the presumption of publication *and signature* by the testator, before or at the moment of attestation. *Hall* vs *Sims* (2 *Mar.* 46;) *Harper et al.* vs *Wilson et al.* (*Sel. Ca.* 503.)

But this presumption, as to the time when the testator subscribed his own name, is defeated in this case by the testimony of *Beaumont*, the only subscribing witness whose deposition was read on the hearing before the Chancellor, and who proved that the subscription of the testator's name was, as already stated, after that of the witnesses, *Gardner and McDonald*.

Then the question is whether, according to the facts as thus appearing, the attestation by *Gardner and McDonald* should be deemed sufficient under our statute.

As the statute requires two witnesses to the publication of a will disposing of real estate, the paper subscribed by the witnesses must, of course, be completed as a legal will at the time of *attestation*.

But waiving the question whether we might presume that, when the paper was first subscribed by *Gardner and McDonald*, the testator being *en extremis*, did not intend to subscribe his own name, but designed then to publish his will as signed only by his name written in the body of it, and which, if thus recognized by him as his signature and the only one contemplated by him, would, ac-

cording to the case of *Miles' will*, (4 *Dana*, 1,) have been a sufficient signing; we are of the opinion that, admitting that the testator even then considered the actual *subscription* of his name as necessary to an effectual publication, and intended to subscribe it, still the attestation, as now proved, was in substantial conformity with the statute, as to each and all of the subscribing witnesses.

To *attest* the publication of a paper as a last will, and to *subscribe* to that paper the names of the witnesses, are very different things, and are required for obviously distinct and different ends. *Attestation* is the act of the senses, *subscription* is the act of the hand; the one is mental, the other mechanical, and to attest a will is to know that it was published as such, and to certify the facts required to constitute an actual and legal publication: but to subscribe a paper published as a will, is only to write on the same paper the names of the witnesses, for the sole purpose of identification. There may be a perfect attestation in fact, without subscription. But to insure identity and prevent the fraudulent substitution of any other document than that which had been published and attested, the statute providently requires the *attesting* witnesses to *subscribe* their names in the presence of the testator: but it does not prescribe the order of the attestation and the subscription; and the attestation being intended to prove that a will had been published, but the subscription being required only to identify the document which had been attested as a will; whether the one or the other of these acts shall have been first in time, cannot be essential to the objects of the statute or the effect of the publication; nor can it be material whether the names of the attesting witnesses or that of the testator, shall have been first subscribed, if, as in this case, those witnesses had been present when the testator either wrote his name or acknowledged it as his signature, and, being called on for that purpose, actually witnessed or attested that fact.

*Attesting* means more than barely subscribing the name to the paper; it implies a knowledge of a publication and of the facts necessary to a legal publication.

The order of time in which testator and witness subscribe their names is not material.

Here, as all three of the subscribing witnesses were present at the final publication of the will, attested the fact of signing and publishing by the testator, and either then subscribed or acknowledged the subscription of their respective names, on the same paper, so as to insure the

A writing is published as a will, (though not signed at the end) & subscribed by 2 witnesses, it is afterwards sign-ed by the testa-

SWIFT AND WIFE
*vs*
WILEY.

tor and declared to be his will, in presence of one other witness (2 first being still present & again acknowledge their signatures) who also subscribed as a witness, the 2 first need, not again subscribe their names, it is a sufficient attestation without.

The requisites to constitute a good publication of a will are, 1. signing by the testator, 2. attesting by two competent witnesses, 3. that it be subscribed by the witnesses in the testator's presence.

identification of the will as then published and attested; every purpose of the statute has been fulfilled, and not even a letter of it violated or disregarded. To *re*-subscribe the names of *Gardner* and *McDonald* would have been a superfluous and puerile act of mechanical repetition, not necessary for identification; because they had once subscribed the same paper in the presence and at the request of the testator, and which fact was recognized by him, as well as by themselves, after his own name had been subscribed, and when the document, thus recognized and identified, was finally and conclusively published as his will; nor can we perceive any other end of either utility or security that could have been promoted by again subscribing names already sufficiently subscribed.

All that our statute requires is, 1st, That the will shall have been *signed* by the testator; 2ndly, *attested* by two competent witnesses, and 3rdly, *subscribed* also by the same witnesses in the testator's presence. Neither the spirit nor the letter prescribes any thing more. And all these things have been indisputably proved in this case; indeed, were it material, we might, with obvious truth and propriety, consider the subscription of the names of the three attesting witnesses, and of that of the testator, as one continuous series of acts essentially indevisible as to time, the two first witnesses having remained with the testator until they had, in fact, attested his subscription and that of the third witness, and all being present and attesting, altogether, the final act of publication, and of attestation and subscription as to each and all.

Wherefore, the decree of tht Chancellor dismissing the bill, is approved and affirmed.

*Pirtle & Speed* for appellants: *Duncan & Ripley* for appellee.