## MARIA GALLAGHER ET AL.

### v.

## MARY KILKEARY ET AL.

*Wills—Attestation—Secs. 2 and 7, Chap. 148, Starr & C. Ill. Stat. —Undue Influence—Instructions—Province of Jury—Writ of Error.*

1. It is sufficient under Sec. 7, Chap. 148, R. S., if the witnesses to a will sign in such a relative position to the testator that he can see them do so, even though they be in an adjoining room.

2. Upon a bill to test the validity of a will, an instruction directing the jury to find the instrument in question to be a valid will, where there is testimony going to show that the testator was not of sound mind when the same was executed, is erroneous.

[Opinion filed October 19, 1888.]

In error to the Circuit Court of St. Clair County; the Hon. Geo. W. Wall, Judge, presiding.

Plaintiffs in error filed their bill in chancery to contest the will of John Kilkeary, who, it appears, was the owner of certain lots in fee simple and a certain leasehold estate in other lots in East St. Louis. The bill charges that on about the 1st April, A. D. 1885, the said John Kilkeary was taken sick with typhoid pneumonia, and that he became delirious from time to time during his illness; that he died about April 21, A. D. 1885; that on the 5th day of April, A. D. 1885, John made a will by which he devised one half of his estate to his wife, Mary Kilkeary, and the other half to his only child, Maria Gallagher; that on the 6th day of April, A. D. 1885, through the undue influence of his wife, Mary Kilkeary, and while in a delirious condition owing to disease, he executed what purports to be a last will and testament, by which he bequeathed to his wife the valuable part of his estate, the lots owned in fee simple, and the least valuable part of his estate, the lots on which he had a leasehold interest, was bequeathed to his daughter. The prayer asks that the instrument and probate thereof be set aside and declared not the last will and testament of John Kilkeary.

The answer denies the material allegations of the bill as to undue influence, as to disease contracted, and as to John Kilkeary being delirious at the time of its execution. Replication and issue to a jury.

Evidence was introduced by defendants tending to show execution and attestation of the instrument, and, under the bill and answer, evidence was introduced by complainants and defendants. Whereupon the court instructed the jury on motion of defendants in error: "The court instructs the jury that they will find from the evidence in this case that the writing produced by the defendants as the will of John Kilkeary is the will of John Kilkeary, and the form of your verdict will be: 'We, the jury, find the writing produced by the defend-

Gallagher v. Kilkeary.

ants as the will of John Kilkeary, is the will of said John Kilkeary.'" A verdict was had accordingly and decree entered thereon. Complainants sue out this writ of error and assign as error the giving of the foregoing instruction and verdict and decree thereon.

Mr. F. C. COCKRELL, for plaintiff in error.

That the court invaded the province of the jury in this cause there can be no doubt. The court passed upon the weight of the evidence, which the jury only were authorized to do. In Chicago West Division Ry. Co. v. Mills, 105 Ill. 63, the Supreme Court says: "Where there is evidence tending to prove a cause of action it is an invasion of the province of the jury to instruct them that the plaintiff can not recover." See, also, Guerdon v. Corbett, 87 Ill. 272; Hubner v. Feige, 90 Ill. 208; Peoria Ins. Co. v. Frost, 37 Ill. 833; Frazier v. Howe et al., 106 Ill. 563.

Again, the court says in Pennsylvania Co. v. Conlan, 101 Ill. 93:

"Motions to exclude evidence, and motions to instruct the jury to find for the defendant, are in the nature of demurrers to evidence, and hence they admit not only all that the testimony proves, but all that it tends to prove. If there is no evidence before the jury on a material issue in favor of the party holding the affirmative of that issue on which the jury could, in the eye of the law, reasonably find in his favor, the court may exclude the evidence or direct the jury to find against the party so holding the affirmative; but where there is such evidence before the jury it must be left to them to determine its weight and effect."

See Frazier v. Howe et al., 106 Ill. 563, stating the rule at length. Perhaps the strongest case in support of the position taken by the instruction in this case will be found in Bartelott v. International Bank, 119 Ill. 259.

But it will be seen from that case that the court is not authorized to invade the province of a jury and determine the weight of evidence. It is only where there is no evidence

tending to prove a material issue that the court can so instruct the jury.

Another thing which seems to be fatal to the position taken in this case is that the statute provides that an issue shall be made up whether a will in question is the will of a deceased person, and that this issue shall be tried by a jury. In cases of this character it does not appear that the practice has obtained of instructing juries as in the case at bar. It has been generally understood that juries only were authorized to pass upon an issue of this character except, perhaps, in cases where parties agree to try the issue by the court. It has never been understood that a court could impanel a jury to try an issue of this character, and after hearing the evidence withdraw the case from the jury and decide as to the validity of a will.

Messrs. TURNER & HOLDER and B. H. CANBY, for defendant in error.

The practice pursued in this case is recommended and approved by our own Supreme Court in Simmons v. Chicago and Tomah Railroad Co., 110 Ill. 340. See, also, City of Mattoon v. Fallin, 113 Ill. 249; L. S. & M. S. Ry. Co. v. O'Conner, 115 Ill. 261; Bartelott v. International Bank, 119 Ill. 259.

PHILLIPS, J. This bill is filed under Section 7, Chapter 148, Starr & C. Ill. Stat., the proviso to which authorizes this procedure, and is as follows:

"*Provided, however,* that if any person interested shall, within three years after the probate of any such will, testament or codicil in the County Court as aforesaid, appear and by his or her bill in chancery contest the validity of the same, an issue at law shall be made up, whether the writing produced be the will of the testator or testatrix or not, which shall be tried by a jury in the Circuit Court of the county wherein such will, testament or codicil shall have been proven and recorded as aforesaid, according to the practice in courts of chancery in similar cases; but if no such person shall appear within the time aforesaid the probate as aforesaid shall be forever binding and conclusive on all the parties concerned,

saving to infants, *femes covert*, persons absent from the State, or *non compos mentis*, the like period after the removal of their respective disabilities. And in all such trials by jury as aforesaid, the certificate of the oath of the witnesses at the time of the first probate shall be admitted as evidence, and to have such weight as the jury shall think it may deserve."

The probate of the will was, on the trial, produced and read. The witnesses to the instrument were Thomas L. Fekete and John Friess. The original instrument was then offered, and the defendants then called as witness Alexander Flannigan, an attorney, who testified he was called to the house of John Kilkeary to write the will, and took with him Thomas L. Fekete; that he made memoranda dictated by John Kilkeary, and then went into an adjoining room and dictated the will produced to Thomas L. Fekete, who wrote at his dictation; that the will so written was read to Kilkeary, who said it was all right. He further states that "the witnesses were in his (Kilkeary's) presence when they signed it, and in the presence of each other and in my presence."

Thomas L. Fekete, one of attesting witnesses, testified that he signed the will as such witness in the presence of the testator. John Friess testifies "that he signed the will as a witness; Fekete and Flannigan were present; John Kilkeary, the man who made the will, was not present; he was in a different room." This is substantially all the testimony as to the attestation of the will.

Under Sec. 2, Chap. 148, R. S., "All wills, testaments and codicils by which any lands * * * are devised, shall be reduced to writing and signed by the testator, or testatrix, or by some person in his or her presence, and by his or her direction, and attested in the presence of the testator, or testatrix, by two or more credible witnesses."

Under this provision, where an issue is made under Sec. 7 of that chapter, it was held by the Supreme Court of this State that, "The party who relies on the will is called upon to prove anew its execution and validity. And what he is required to prove to sustain the instrument, the other party is permitted to disprove in order to defeat it. There are some indispen-

sable requisites to the due execution of a will. It must be
signed by the testator, or by some one in his presence and by
his direction, and attested in his presence by two or more wit-
nesses.

"A paper that has not thus been subscribed and witnessed
has no force or effect as a will under our statute." Rigg v.
Wilton, 13 Ill. 15.

In Potter v. Potter, 41 Ill. 80, the court holds: "The ninth
(instruction),in specifying the statutory requirements necessary
to a valid execution of a will, omits to inform the jury that it
was requisite that the witnesses should attest the will in the
presence of the testator. To render this instruction precisely
accurate this should have been stated."

In Ambre v. Weishaar, 74 Ill. 109, a case where the attesta-
tion of the will by subscribing witnesses was in a different
room from where the testatrix was, the only question pre-
sented by the record was whether the will was attested in
the presence of the testatrix; and on the facts the court holds:
" We regard it as sufficiently established by the authorities
that if witnesses to a will, while signing their names thereto
as such witnesses, are in such a place that the testator can
see them if he chooses, they are to be regarded as within his
presence within the meaning of the statute; that it is not
necessary that they should be in the same room with the tes-
tator, or that he should actually see them sign." But in that
case the court further holds: " Without further dwelling
upon this conflicting testimony, we will say that, after a con-
sideration of the entire testimony and the surrounding cir-
cumstances, we can come to no other conclusion than that the
testatrix was in such a situation that she might have seen the
attestation."

We can not hold that by the language just above quoted
from Ambre v. Weishaar it was intended by the Supreme
Court to reverse what was said in Rigg v. Wilton, or in Potter
v. Potter, that it must, on the trial of the issue where a
bill is filed under Sec. 7 of the statute, be shown that the in-
strument produced as the last will of a testator was attested in
his presence by the subscribing witnesses, but that, as applicable

Gallagher v. Kilkeary.

to the state of facts shown by the evidence in Ambre v. Weishaar, if the testator and the witnesses were at the time of the attestat'on in such relative positions that the testator could see the attesting witnesses sign, it is sufficient.

In this case the two attesting witnesses and the attorney who was called to write the will are sworn in behalf of proponents. One attesting witness and the attorney testify that the will was, by the attesting witnesses, signed in the presence of the testator. The other attesting witness testifies it was signed by him as attesting witness in another room than the one in which the testator was, and there is no testimony in the record to show the relative positions of the attesting witness and testator, or whether the testator could have seen the signing by the attesting witness. There was this conflict in the evidence, and the proponents were called upon anew to prove its execution and validity; and of the indispensable requisites to the due execution of a will, it must be signed by the testator or by some one for him in his presence and by his direction and attested in his presence by two or more witnesses. But notwithstanding this conflict in the evidence and this absence of evidence the court assumed to determine the question of fact, although the jury were required to determine other questions of fact.

On the allegation of undue influence of Mary Kilkeary exercised over the testator, and the delirious condition of John Kilkeary at the time of the execution of the will, there was the evidence of Flannigan, Freels, Fekete, and four other witnesses called by the proponents, most of whom substantially testified that his mental condition was such that he was conscious of the effect of his acts and was in his right mind, and several of these witnesses state acts done and directions given by Kilkeary with reference to the execution of the instrument. There was also the evidence of Flannigan and Freels that the day before the instrument was executed Flannigan was called to Kilkeary's house to write a will for him and did so, and that will divided the property equally between wife and daughter, and this instrument executed the next day by which the most valuable property held in fee

simple was conveyed to the wife and the leasehold, the least valuable, to the daughter.

When the complainants, plaintiffs in error, called Mrs. Robert Gray, she testified that on the day of the execution of the first will she was at the house, saw Mr. Flannigan, Mr. Freels and Mr. Sullivan leave the house—those were the attorney who wrote the will and the witnesses thereto—was then told by Mrs. Mary Kilkeary, the proponent (the defendant in error), that the will had been made, the property divided equally, share and share alike; that the will was not satisfactory; that it was going to be changed anyhow; that Mary, Patrick Kilkeary's wife, was going to speak to Patrick, to see what he could do to have his brother change the will; that witness then went into the room and saw testator; that he could not recognize her, or even recognize his wife; that he had a high fever and was delirious; that the evening of the next day, the day after the day on which the proposed instrument was executed, she called at Kilkeary's house and saw him again, and he was then delirious.

This evidence was pertinent to the issue. Testator's condition of mind was shown by this witness prior to and shortly after the execution of the instrument. The weight of the evidence and its effect is for the jury. This evidence must have been admitted as relative, material testimony; as tending to sustain the allegations of the bill; if it did so its weight was to be determined by the jury.

Here the jury must find a verdict as to whether the instrument offered in evidence was the last will of testator, and were by the court instructed to find certain facts, and were not permitted to determine the effect and weight of testimony where that testimony was relevant to the finding. By the instruction the jury were directed to find the instrument the last will and testament of John Kilkeary, but must not, in arriving at their verdict, give any weight to certain relative testimony tending to show the condition of the mind of testator.

The case relied upon most strongly by counsel for defendant in error, Simmons v. C. & T. R. R. Co., 110 Ill. 340,

states the rule to be, that "when the evidence given at the trial, with all inferences that the jury could draw from it, is so insufficient to support a verdict for plaintiff that such a verdict if returned must be set aside  *  *  *  the court may direct a verdict for defendant."

But that is a very different case from the one now under consideration, and we apprehend no case can be found which goes so far in its application to our practice that the court may direct the jury that, even though evidence is offered tending to sustain the plaintiff, and there is evidence pertinent to the issue offered by the defense, still you must find for the plaintiff and can not weigh the evidence introduced in behalf of defendant. To so hold would be destructive of the right of trial by jury. We think the court erred in giving this instruction and the cause will be reversed and remanded. ·

*Reversed and remanded.*