OF

## THE STATE OF NEW JERSEY.

### OCTOBER TERM, 1900.

---

WILLIAM J. MAGIE, ORDINARY.

ALFRED REED, VICE-ORDINARY.

---

FANNIE E. LACEY et al., appellants,

*v.*

HARRIET N. DOBBS, respondent.

[Filed November 17th, 1900.]

1. The requirement of the statute, that a will shall be signed in the presence of witnesses, is satisfied by proof that testatrix having declared or assented to the declaration, that a paper writing in dispute was her will, wrote thereon, under circumstances that required the inference that what she wrote was her name as it appears at the bottom thereof, in the presence of witnesses, who, from their situation, could and did see her write, although they say they did not at the time see what she wrote.

Lacey *v.* Dobbs.

2. When persons, who have been called and attend for the purpose of witnessing the execution of a will of testatrix, write their names upon a paper writing which has been duly declared to be her will in their presence, with intent to be witnesses thereto, and testatrix immediately afterward, in their presence, writes her name thereon at the bottom, and the whole transaction was continuous and uninterrupted, from which none of them withdrew his presence or relaxed his attention to the matter in hand, viz., the execution of a will by testatrix, the requirements of the statute in that respect are substantially complied with.

On appeal from a decree of the Essex county orphans court, affirming the decree of the surrogate admitting to probate the will of Mary Ann Caldwell.

*Mr. Addison Ely,* with whom was *Mr. W. H. H. Ely* (of the New York bar), for the appellants.

*Mr. Harry F. Barrell* and *Mr. Alexander Grant,* for the respondent.

THE ORDINARY.

This appeal was heard before the late ordinary, upon the evidence which was before the orphans court, and the evidence of one of the subscribing witnesses who had not been called in that court, which was taken before the ordinary himself. He held the matter under advisement and had not decided it at the time of his lamented death. It has been reheard by me upon the same evidence.

On the part of appellants, the sole contention is that it was erroneous to admit to probate the will in question, upon the ground that the proofs showed that it was not executed in the manner required by law.

The facts upon which the decision must be made are the following: Mary Ann Caldwell, the deceased, had lived in the city of Newark for many years, in the same house with a sister who died therein in the early morning of March 25th, 1897. In the evening of that day, deceased, being then ill of the disease of which she died a few days after, requested one Runkle, who was unskilled in the drafting or superintending the execution of wills, to draw a will for her. It would seem that deceased

Lacey *v.* Dobbs.

furnished him, or caused him to be furnished, with a will to be used as a form. He proceeded to draw a will, written on one side of a sheet of paper. It used apt language to dispose of the whole estate of deceased and to appoint an executor. It then proceeded as follows:

"Written my hand seal, at Newark, the twenty-fifth day of March, 1897.

"Signed, sealed and declared by the testator to be her last will and testament in our presence, who in her presence and of each other have here to set our hands as witnesses to the will aforesaid."

When the writing was completed, Runkle called in two women who were in the house and well known to deceased, and told them in her presence that she was going to make a will and asked them to be witnesses to it. Deceased asked one of them to be a witness, and acquiesced in Runkle's request to both. Runkle then signed the will at one side of the bottom of the sheet; one of the women then signed next upon the right, and the third signed still further on the right. Deceased then took the paper writing in her hand and said it was "her turn." She expressly requested the witnesses to remember the date in case there should be any trouble. She read, or appeared to read, the paper over, and declared it all right. Then, at the same table where the others had written, or on a book given her for that purpose, she wrote something upon the paper.

It is conceded that the evidence clearly shows that the witnesses signed their names before the deceased wrote upon the paper, but it was all done on one occasion. No one had left the room until the transaction was completed, and no other business intervened.

The two female witnesses both declared that while present in the room with deceased, in positions where they saw her write upon the paper, yet that they did not in fact see what she wrote. Runkle fails to remember whether he did see or not what she wrote. He says, however, that the whole of the paper is in his handwriting except the words "Mary Ann Caldwell" at the bottom of it, and the signatures of the two female witnesses, and except, perhaps, the words "Mary Ann Caldwell" in its first line.

The next morning a seal was affixed to the paper by Runkle or the deceased in the presence of the same witnesses, but what occurred then is of no consequence, because there is no pretence that it, standing alone, could have established the execution of a will. Upon these facts it is contended that the execution of this paper writing appears not to conform to the statutory requirements declared to be necessary to establish a testamentary disposition.

Whether or not this writing is a testamentary disposition by Mary Ann Caldwell must depend upon its execution having been shown to be in conformity with the requirements of our Wills act, which, so far as they affect the question, are expressed in the following language, viz.:

"All wills and testaments  *  *  *  shall be in writing and shall be signed by the testator  *  *  *  and such writing declared to be his last will, in presence of two witnesses, present at the same time, who shall subscribe their names thereto as witnesses in the presence of the testator."

The writing is in the form of a will and proper to be a testamentary disposition.

It is first contended that the proofs did not make it appear that Mary Ann Caldwell signed it. This contention is based upon the fact that the two female witnesses, while agreeing that Mary Ann Caldwell wrote something upon the paper, yet say that they did not see what she wrote, and the third witness says that he cannot remember whether or not he saw what she wrote.

But, in my judgment, the proofs leave it beyond doubt that Mary Ann Caldwell did, in fact, write her name where it appears at the end of the paper. The admission of Runkle is that the whole paper is in his handwriting except the words "Mary Ann Caldwell" at its end, and the names of the two female witnesses, and except, perhaps, the words "Mary Ann Caldwell" in the first line, which, he says, resembles her signature at the end of the paper, a fact which inspection verifies. All of the witnesses agree that after they had signed the paper, Mary Ann Caldwell took it, read it, or appeared to read it over, and declared it to be all right. She also declared, as she took the

paper after they had signed, that it was "her turn." All again agree that she wrote something upon the paper. The inference from this evidence is that what she wrote was the name Mary Ann Caldwell, which now appears there.

It is next contended that although the proofs may require the inference that she did in fact sign this paper, and that in the presence of the three persons who signed as witnesses, yet that they were not, within the meaning of our statute, "witnesses" capable of authenticating her signature. This contention is put on the ground that at least two of them, while witnessing her act of writing her name, did not, in fact, see that it was her name that she wrote. It is argued that a witness must see and be able to identify the *signum* of the person executing the will by having actually seen it made.

To yield to this contention would, I think, add to the statute another requirement. Its language simply requires an actual signature in the presence of witnesses. If, therefore, the proof satisfies the judgment that an actual signature was made, and that it was made in the presence of the witnesses, the measure of its requirements in this respect is fully shown. In *Den* v. *Mitton, 7 Halst. 81,* the supreme court had under consideration a charge to a jury which declared that the requirements of the then statute of wills that the signing should be "in the presence of the witnesses," was satisfied by proof that the subscribing witnesses were so situated that they could and would naturally see and hear the signing and publication. The charge was approved in that respect, and it is plain from the well-considered opinion of Chief-Justice Ewing, and the cases he cited, that he deemed the matter to be governed by the same rule which had been applied in the English courts with respect to the signatures of witnesses in the presence of the testator. That rule was that such signature was sufficient if made where the testator was able to see the witness sign. Such a rule is still applied in our courts. *Combs* v. *Jolly, 2 Gr. Ch. 625; Ayres* v. *Ayres, 16 Stew. Eq. 565.*

The persons who subscribed as witnesses were, in my judgment, apt and proper witnesses under our statute, notwithstanding they cannot say that they saw the letters which made up

the name Mary Ann Caldwell actually formed by her pen when she wrote upon this paper.

It is lastly contended that the execution of this paper was defective because Runkle and the two women did not subscribe their names thereto as witnesses. The contention is put on the ground that their signatures were made before the signature of Mary Ann Caldwell. It is insisted that as they had not then witnessed her signature, their prior signatures were nullities, ineffective to satisfy the requirements of the statute.

While the statute requires that the will shall be signed by the testator and declared by him to be his will, it has been held in this court that a declaration before signature is a compliance with the statute, although the formality prescribed would indicate that it should be made after signature. *Errickson* v. *Field,* *3 Stew. Eq. 634; Mundy* v. *Mundy, 2 McCart. 290.* This is put upon the ground that the order of the performance of the acts requisite to the valid execution of a will is immaterial.

But the insistment is that the statute expressly prescribes an order in performing the two acts, viz., (1) the signing by the testator, and (2) the signing by the witnesses, and that the latter cannot effectively sign before they have witnessed the signature of the former.

The question thus presented has never, so far as I can discover, been dealt with in our courts, except in the case of *Mundy* v. *Mundy, ubi supra,* in which Chancellor Green pronounced in favor of the immateriality of the order of signature, and declared that if the proof in that case established the signature of one of the witnesses to have been made before that of the testator, the statute was complied with. It is argued that this observation of the learned chancellor was unnecessary to the decision of the case, and that he cited as his authority a decision of a surrogate's court in New York, which has since been discarded and overruled. It is not clear from the opinion whether the point was necessary to the decision of that case, but a *dictum* of that eminent jurist carries with it no little weight. A construction of a statute in a particular to which his attention has been specially directed, adopted by him, may well incline us to a similar construction.

Lacey *v.* Dobbs.

In construing the statute of wills, courts should, no doubt, constantly keep in view the legislative intent, which is to protect heirs-at-law and next of kin from fraud and imposition upon their ancestor. Such protection is designed to be afforded by the requirement of certain formalities in the execution of any writing designed to be a testamentary disposition. Formalities thus required must appear to have been observed, and a writing which may be convincingly proved to have been intended to express the testator's will, will yet be denied probate if the required formalities are not shown to have been observed. But it should also be borne in mind that this legislation is intended not only for the guidance of those learned in the law, but of all persons who desire to express their will while living, as to the disposition of their property after their death. It results that no construction of the act should be adopted which makes necessary a literal, in distinction to a substantial, performance of the required formalities. An example of this has been already alluded to. The act expressly requires the signing, and a declaration that it is testator's last will. By the collocation of these requirements, it seems to be implied that one should precede the other, yet it is settled in this court that if both formalities are observed, it is entirely indifferent which takes place first.

Turning now to the evidence, we find that the testatrix actually signed in the presence of three witnesses, and that the witnesses actually signed in her presence. The express formalities required are therefore literally complied with. The argument that they could not sign as witnesses, and did not become such until after testatrix signed, does not commend itself to my judgment. They were called and attended for the purpose of witnessing the execution of testatrix's will; they placed their signatures upon the paper in the execution of that purpose; they actually witnessed testatrix's signature made immediately after. These things were done as parts of one continued, uninterrupted transaction, from which none of them withdrew his presence or relaxed his attention. In my judgment, the requirements of the statute are thereby substantially complied with.

The conclusion thus reached is not wanting in such support

as is afforded by a similar construction given to statutes closely resembling our own, by the courts of other states.

Thus in Kentucky the supreme court, in a case like that under consideration, used this language: "Nor can it be material whether the names of the attesting witnesses or that of the testator should have been first subscribed, if, as in this case, the witnesses had been present when the testator * * * wrote his name, and being called for that purpose, actually witnessed * * * the fact." *Swift* v. *Wiley, 1 B. Mon. 114; Sechrest* v. *Edward, 4 Metc. (Ky.) 163.*

The court of appeals of Virginia, by Judge Baldwin, declared that the fact that the testatrix signed before or after the subscription of the witnesses was immaterial "where the whole transaction must be regarded as one continuous, uninterrupted act, conducted and completed within a few moments while all concerned in it continued present, and during the unbroken, supervising, attesting attention of the subscribing witnesses." *Rosser* v. *Franklin, 6 Gratt. 1.*

The supreme court of Pennsylvania declared in respect to the execution of a will identical with the execution disclosed by the evidence in this case, that if the transaction consisted of several parts, all of which occurred at the same moment, and in the same presence, it was not to be pronounced invalid because it did not occur in the orderly succession which the law contemplates. *Miller* v. *McNeill, 35 Pa. St. 217.*

The supreme court of Connecticut, upon a similar case, thus declares itself: "But where, as in the present case, witnesses are called to attest the execution of a will, and being informed what the instrument is, subscribe their names thereto as witnesses, and the testator on his part, and in their presence, duly executes the instrument as his will, and all is done at one and the same time and for the purpose of perfecting the instrument as a will, we cannot say that it is not legally executed merely because the names of the witnesses were subscribed before that of the testator." *O'Brien* v. *Galagher, 25 Conn. 229.*

It is not to be denied that the courts of other states and of England, have expressed contrary views.

The New York case cited by Chancellor Green was *Vaughn*

v. *Burford, 3 Bradf. 78.* The court of appeals of that state, in the later case of *Jackson* v. *Jackson, 39 N. Y. 153,* expressly decided that under their statute the signature of the testator must precede that of the subscribing witnesses to make a valid execution. That decision was mentioned as the law of New York in *Sisters of Charity* v. *Kelly, 67 N. Y. 409.* The surrogate's decision cited by Chancellor Green has therefore been overruled.

The ecclesiastical courts of England have given a similar construction to the act. *1 Vict. c. 26 § 9; 1 Jarm. Wills (R. & T. ed.) 254,* and cases cited in the note.

The courts of North Carolina, Georgia, Indiana and Texas have put upon their respective statutes a like construction. *In re Cox, 1 Jones 321; Ragland* v. *Huntingdon, 1 Ired. 561; Duffie* v. *Corridon, 40 Ga. 122; Brooks* v. *Woodson, 87 Ga. 379; Fowler* v. *Stagner, 55 Tex. 393.*

It is to be remarked that these adverse decisions construe statutes which are different from ours. Thus the act *1 Vict.* requires that

"such witnesses [that is, those in whose presence the signature of testator has been made or acknowledged] shall attest and subscribe the will in the presence of the testator."

The statute of New York, construed in the case above referred to, reads thus: "There shall be at least two attesting witnesses each of whom shall sign his name as a witness." The statutes of the other states generally require attesting witnesses. To attest not only bears the meaning to witness, but also to bear witness to, and it may be argued that an attesting witness is something more than a subscribing witness, and that the subscription of an attesting witness bears witness to the act of the testator in a different sense from that which the subscription of the subscribing witness would do. Whether the difference of language makes a substantial distinction between these statutes and our own, when the force and effect given by our courts to the signatures of witnesses is considered, may perhaps be questioned. For it is settled in this state that when an attestation clause, setting forth a full compliance with the requirements

of our statute, is signed by the witnesses, it becomes *prima facie* evidence of due execution, and raises a presumption which must be overcome by proof. If the subscribing witnesses are dead, and satisfactory proof of their handwriting is admitted, that presumption is raised, and it will be effective unless overcome. *Allaire* v. *Allaire, 8 Vr. 312; S. C., 10 Vr. 115; Patton* v. *Hope, 10 Stew. Eq. 522.* The effect thus given to the signatures of witnesses when preceded by a proper attestation clause, may perhaps be deemed to make them not only subscribing but attesting witnesses.

Without reference, therefore, to the differing language of the respective statutes, I find myself unable to concur in the adverse decisions, and I do concur in and approve the decisions above cited, which construe such statutes as complied with, although the witnesses signed before the testator, if the acts were done during an uninterrupted transaction, as in this case.

The will was properly admitted to probate, and the decree appealed from must be affirmed.