[No. 5554.]

INTERNATIONAL TRUST COMPANY v. ANTHONY.

**Wills—Attestation—**The word "attested" in § 4664, Mills' Stats., conveys the idea of the mental act, on the part of the witness, of observing the testator's signature, and the manual act of subscribing in the testator's presence.—(477, 486)

A codicil, the execution of which was witnessed by two witnesses, one of whom subscribed it in the testator's presence and the other at a later day, and not in his presence, will be rejected. —(486)

*Appeal from Denver District Court —* Hon. FRANK T. JOHNSON, Judge.

Messrs. MACBETH & MAY, for appellant.

Mr. JOSEPH C. EWING, and Messrs. STEVICK & BANNISTER, for appellees.

Mr. JUSTICE BAILEY delivered the opinion of the court:

Scott J. Anthony died on the 2nd day of October, 1903, leaving his widow, Frances B. Anthony, as his sole direct heir.   He left two papers of a testamentary character, the one a will of date November 27th, 1901, and the other an attempted codicil thereto of date September 24, 1903.   The will proper was duly passed to probate, without objection.   Under the will, the widow and certain relatives of the testator were the devisees and legatees, and under the supposed codicil thereto, the devisees and legatees are the same, but take different property interests in the estate from those declared in the original testament.   The relatives above referred to interposed objection to the probate of the alleged codicil upon the ground, among other things, that the same had not been executed and attested in conformity with the requirements of our statute, which latter objection is the only one here for consideration. While both of the attesting witnesses thereto saw Mr. Anthony execute the purported codicil, and heard him declare it to be such, the witness, Mary B. Snow, alone subscribed it in his presence.   The other witness, Augusta M. Lindall, did not subscribe the same until some days after its execution, and then out of the presence of the testator.

Under our statute, the formal requirements for the execution of wills are thus prescribed:

"All wills by which any property, real or personal, is devised or bequeathed, shall be reduced to writing and signed by the testator or by some one in his presence and by his direction, and *attested* in the presence of the testator by two or more witnesses."—Section 4664, Mills' Ann. Stats.

The provisions of this section, by force of sec-

tion 4662, Mills' Ann. Stats.. are extended to codicils of wills.

Under the facts here shown, and the assignment of errors, but one question is presented for determination, namely, does the word "*attested,*" as used in the statute, by legislative intent, include subscription? If yes, then the purported codicil must, as a matter of law, be rejected; if no, it should go to probate.

Counsel for appellant vigorously urge, and support their contention with suggestions of more or less persuasiveness and plausibility, that, under our statute, no subscription of their names to the attestation clause of a will by the witnesses to the execution thereof, is at all necessary, and that the mere fact of mental attestation—that is, of observation and perception—is alone sufficient. Respectable authorities, but all in the nature of dicta, as we shall presently see, are cited to uphold this contention. However, no authority has been found, at least none has been submitted, from a case depending solely for its decision, as does the one at bar, upon such holding. We have neither hesitancy nor doubt in declaring, under the requirements of our statute governing the execution, proof and probate of wills, considered at large, that the word "*attested,*" by intent of the legislature, includes not only the mental act of observing, but as well the manual one of subscription; and, further, that such subscription must, by the express terms of the statute, be in the presence of the testator, and upon this latter point there is no issue.

The determination of this case rests upon what the precise meaning of the word "*attested*" is. It is, therefore, well to first consider the significance of its derivation, as this may prove an important aid in reaching an accurate and correct conclusion as to its

true meaning.  The term comes from the two Latin words, *"ad"* and *"testari,"* which mean, literally, to witness to, or to bear witness, and by all authority the term *"witnessed"* includes *"subscription."* Thus the word must originally have stood for the idea, not only of observation, but of certification, of the thing noted.  Countless instances illustrative of the double use and significance of the term might be cited, both from English and American statutes and decisions.  In support of the contention that this word carries such double meaning, as a matter of common usage, attention is directed to the following: *In re Probate of D'Avignon's Will,* 12 Col. App. 489; *In re Shapter's Estate,* 35 Colo. 584; *Gerrish v. Nason,* 22 Me. 438.

. · The dictionary definitions, without exception, show conclusively that the notion associated with the word *"attested,"* both in its technical and nontechnical use is, that of observation and subscription. It would serve no good purpose to print here at length these definitions, except as they may appear from the authorities hereinafter quoted.  Were there conflict among them, then discussion and citation might be serviceable; but they all agree, and show, to a demonstration, that, as a matter of common usage, this word, whether employed in a technical or nontechnical sense, always and invariably has associated with it the double significance of mental observation and manual certification, by affixing to the attested paper the name or names of those so observing.  It is impossible to believe, and equally difficult to hold, that the legislature used this word in any other or different sense than the one which universally attaches to its ordinary and common use; for why should it?

By judicial finding, the word *"attested,"* as in written documents of various kinds, has fre-

quently been construed in different branches of the law, and always, so far as we have been able to learn, to the effect that it includes subscription. Such construction has had to do with the attestation of deeds, powers, bills and notes, official process and records. That such seems to have been practically the uniform view of the courts, we cite: *Logwood v. Hussey,* 60 Ala. 417; *White v. Magarahan,* 87 Ga. 217; *Wright et al. v. Wakeford,* 4 Taunt. 213; *Doe dem Spillsbury v. Burdette,* 9 Ad. & El. 936; *Grinnell v. Baxter,* 17 Pick. 386; *Shaw v. Smith,* 150 Mass. 166; *Maguire v. Church,* 49 Conn. 248.

If, then, the word *"attestation"* carries with it the notion and requirement of subscription, when used in reference to the execution and authentication of such matters, as has been hereinabove referred to, it is not readily apparent why that meaning should, as by magic, disappear when used in connection with the attestation of wills and codicils thereto. Indeed, we think that such is not in fact the case, for it seems clear that the same reasons which make manifest the necessity and demand for subscription, in connection with the documents to which allusion is made above, would naturally indicate even stronger and more powerful reasons for a like demand and need in the attestation of wills.

There are but three of our states from the statutes of which the word *"subscription,"* in connection with the attestation of wills, is omitted. Iowa, which substitutes the word *"witnessed"* for *"attestation"* and *"subscription";* Illinois and Colorado, whose statutes in this behalf are identical, and which use in this connection the word *"attested"* alone. Illinois has long since put at rest the dispute here involved.

In *Calkins v. Calkins,* 216 Ill. 548, which con-

tains its latest pronouncement on this question, the supreme court of that state said:

"Attestation is the act of witnessing the actual execution of an instrument and subscribing the name of the witness in testimony of the fact (4 Cyc. 888). In the case of *Drury v. Connell*, 117 Ill. 43, it was said that the attestation of a will consists in the subscription of the names of the witnesses to the attestation clause as a declaration that the signature of the testator was affixed or the will acknowledged in their presence, and in the case of *Sloan v. Sloan*, 184 Ill. 579, the court considered the question whether there is a distinction between the attestation of a will and the subscription of the names of the witnesses. In that case, the proponent offered to próve, by one who was present, that the will was signed by both the witnesses in his presence, and that it was executed and published by the deceased as and for his last will in his presence, but it was said that a different rule had been too long acquiesced in and understood in this state, and that, to render a will valid it must be subscribed by the attesting witnesses. The supposed distinction, as applied to our statute, was rejected, and it was held that an attesting witness must be a subscribing witness, and that it is not competent to prove a will by a person who was present and witnessed its execution, but did not sign as an attesting witness.

"That the attestation mentioned in the statute consists in the witnesses subscribing their names, is shown by other provision of our statute. In case of a deceased, insane or absent witness, the court may admit proof of the handwriting of such witness, and admit the instrument to probate as though it had been proved by such subscribing witness in his or her proper person."

That the decisions of Illinois, from which state

our statute is bodily taken, are unanimously to the effect that the word *"attested"* includes the act of certification, by the actual subscription of the names of the attesting witnesses to the will itself, or to the codicil thereto, we refer to: *Gallagher v. Kilkeary,* 29 Ill. App. 415; *Standley v. Moss,* 114 Ill. App. 612; *Drury v. Connell,* 117 Ill. 43; *Gibson v. Nelson,* 181 Ill. 122; *Sloan v. Sloan,* 184 Ill. 579; *O'Brien v. Bonsfield,* 213 Ill. 428.

It is contended on behalf of appellant that, even though our statute is taken from Illinois, yet the precise question now involved was not determined by the appellate courts of that state until long after its adoption here, and therefore that such holding has no binding force with us. While this may be literally true, still there were rendered certain decisions by the appellate courts of that state, years before Colorado even had a territorial government, recognizing subscription in such cases as a common practice, and apparently taking it for granted that subscription by the witness was a necessary element in the execution of a valid will. Possibly, in a strict sense, we are not bound by these cases, yet it must be manifest, especially since that state and our own are the only ones having these identical provisions, that they are more than ordinarily persuasive. However, we are not forced to rely on the authority of these decisions alone to support our conclusion on this question. The supreme court of Wisconsin, in discussing this same matter. declared among other things, the following:

"It would be difficult, no doubt, to satisfactorily define that element in the attestation of a will which is not also present in the mere subscription to a will. No physical act is required in the one which is not also required in the other, and it is not clear what mental act or fact appropriate to the one is absent

from the other.  And the definitions of the most recent lexicographers do not make it quite perspicuous. The Century Dictionary defines an *'attesting witness'* to be 'a person who signs his name to an instrument to prove it, and for the purpose of identifying the maker or makers.'  The Standard Dictionary defines *'attestation'* to be 'the subscription by a person of his name to a written instrument to signify that the same was executed in his presence, or that it is correct.'  Since it is well settled in this state that it is not necessary to the validity of a will that the witnesses, at the time when they attest it, shall know the nature of the instrument they are attesting (*Allen v. Griffin*, 69 Wis. 529), it is not clear what, if anything, attestation is intended to add to the mere fact of subscription.  However that may be, it is well settled that an instrument in writing, signed by the testator, and subscribed in his presence and at his request, which may be implied from circumstances, by two competent witnesses, is *prima facie*, and so far as formality of execution goes, a valid will.  Anything further in mere form is not contemplated, and would be mere supererogation."—*Skinner v. American Bible Society,* 92 Wis. 209-213.

In Iowa, where the statute, as already observed, required that the will must be in writing, *witnessed* by two competent witnesses, the word *"witnessed"* there taking the place of the word *"attested"* in our statute, the supreme court held a will void for the lack of such subscription, and supported its conclusion in this language:

"Then, again, the language of the act is far from being inconsistent with this construction. What does the word 'witnessed' mean in this connection?  To determine this, we must bear in mind the entire language, the almost uniform legislation on the subject, and the solemn nature of the instru-

ment thus to be witnessed. The section on the subject of *verbal* wills (2311) could, of course, only intend that the will of the testator should be established by two competent witnesses present at the time of the declaration. For, as there was no writing, there was nothing to subscribe. But the section under consideration (2313) relates to written wills, and to their attestation. And now what would any fair mind, reasonably, naturally and even necessarily understand by the words, 'must be in writing, witnessed by two competent witnesses'? To say that a writing is witnessed, includes, as it seems to us, almost necessarily, the idea that it is witnessed in writing, and to exclude the conclusion that it is witnessed in any other manner.

"The witnessing is a part of the writing. And it is not correct or usual, in either a statute or ordinary conversation, to speak of witnessing a written instrument otherwise than by subscribing the names of the witnesses. And this is sustained by the thought that the witnesses to a will become such from the time they thus sign it. They testify from that moment, and hence, though they should die before the testator, or before the probate of the will, it is still good. And they are required to thus testify, not merely to perceive or know what is going on. In other words, they attest not merely by their eyes and ears, but testify by the act of making their signatures, that they thus identify the instrument." —*In re Last Will of Boyer Boyens*, 23 Ia. 354.

As we have before noted, the word *"attested"* is derived from the Latin words *"ad"* and *"testari,"* meaning literally to witness or to bear witness, which, in effect, makes *"attested"* correspond precisely in meaning with the word *"witnessed."* The same reasoning, therefore, employed in Iowa to show that *"witnessed"* includes both the mental act of

observing, and the mechanical one of subscribing, fittingly applies to a like meaning for the word "*attested*," and with equal force. The *Iowa case* is an authority directly in point to support such conclusion as to the meaning of "*attested*."

Referring, now, to the Kentucky case of *Swift v. Wiley*, 1 B. Mon. 114, upon which chief reliance is had by counsel for appellant to support their contention that, under our statute, no subscription by the witness at all is needful, we observe that the point considered, and which was actually there decided, was as to the time when the subscribing witnesses must attach their names to the instrument, and whether before or after the testator had done so. The Kentucky provision reads:

"So as such last will and testament be signed by the testator or testatrix, or by some other person in his or her presence, and by his or her direction; and moreover, if not wholly written by himself or herself, be *attested* by two or more competent witnesses, *subscribing* their names in his or her presence."

In that case, the facts were, that the subscribing witnesses, in the presence of the testator, actually subscribed their names to the attestation clause after the testator had declared the document to be his last will, but before his signature had been attached. Then, after the testator had actually signed, the witnesses again acknowledged their respective signatures as subscribing witnesses, in the presence of a third subscribing witness and also of the testator. So that the questions as to whether *attestation* includes *subscription*, or whether these terms are mutually exclusive of each other, in order to determine the validity of that will, were not involved. The sole point was, whether such attestation, under the facts disclosed, was a good and valid one under that stat-

ute. On this matter the court, holding the attestation sufficient, said:

"Here, as all three of the subscribing witnesses were present at the final publication of the will, attested the fact of signing and publishing by the testator, and either then subscribed or acknowledged the subscription of their respective names, on the same paper, so as to insure the identification of the will as then published and attested; every purpose of the statute has been fulfilled, and not even a letter of it violated or disregarded. To resubscribe the names of the witnesses would have been a superfluous and puerile act of mechanical repetition, not necessary for identification; because they had once subscribed the same paper in the presence and at the request of the testator, and which fact was recognized by him, as well as by themselves, after his own name had been subscribed, and when the document, thus recognized and identified, was finally and conclusively published as his will; nor can we perceive any other end of either utility or security that could have been promoted by again subscribing names already sufficiently subscribed."

This extract indicates the real thing decided, and shows, also, that what the court put forth upon the question of attestation and subscription being different things, and being mutually exclusive of each other, was in no sense necessary to the decision reached. That talk was dictum, pure and simple.

In the New York case of *Herrick v. Snyder,* reported in 59 New York Supplement, upon which counsel for appellant also confidently rely to warrant their contention respecting the non-necessity of subscription under our statute, the question there arose upon the consideration of a statute which provides this, among other things: "There shall be at least two attesting witnesses, each shall sign his

name as a witness, at the end of the will, at the request of the testator.''

The facts of the case were, that one attesting witness subscribed her name out of the presence of the testator. The point for decision was, whether such subscription was sufficient, and the court there, properly, we think, held, in as much as the statute did not expressly provide that such subscription shoud be made in the presence of the testator, that the subscription, although out of the presence of the testator, was sufficient. So here again it will be seen that there was neither occasion nor necessity for the court to declare aught upon the question of whether attestation included subscription, or whether they are mutually exclusive of each other; and, since no determination of that matter was needful for a decision of the case, it, too, is dictum. It should be noted that the New York statute, while requiring subscription, does not expressly require it in the *presence* of the testator, while all the elements of attestation, under our express law, must be performed in *that presence.*

Had the determination of these cases depended upon the single question of whether attestation includes subscription, and a holding that it does not would have been to the effect, as in this case, that no subscription whatever to the attestation clause of a will by the witness thereto is required, it may well be that those courts, upon a fuller investigation of the authorities, would have reached a different conclusion.

From the foregoing, since both of the conclusions on this point were mere dicta, their force and value in aid of the contention of appellant's counsel is measurably diminished. But we frankly say that, had these cases depended for their determination upon the conclusion thus announced, even then we could

not follow them, since, in our judgment, neither the reasons adduced to support them, nor the conclusions themselves, on this particular point, are sound, viewed in the light of the authorities, judicial and otherwise, which firmly fix the meaning of the word *"attested,"* both in its technical and nontechnical use.    Should this court hold that no subscription of the witnesses is necessary in the execution of a will, to the attestation clause thereof, or anywhere upon the document itself, and such would be the effect of the approval of this codicil, it would enjoy the unique and unenviable distinction of being the only court of final resort to do so—at least, of which we have knowledge—in this or any other country.    Such decision would open the way, thus far closed by every other state, as effectually and completely as identification by the subscription of the names of the witnesses thereto upon the document attested, can accomplish that result, to all manner of fraud and imposition, by way of the surreptitious substitution of false and spurious documents for the genuine and true, and by numerous other dishonest means, which will readily enough suggest themselves.

To our mind, the word *"attested,"* under all of the authorities, carries the idea both of mental and mechanical act, and, as between it and "subscription," it is the more comprehensive term, and includes the latter.    For example, there may be subscription without attestation, but not attestation, in conformity with the requirements of our statute, without subscription.    The word *"subscribe"* appears in nearly all of the other state statutes in conjunction with the word *"attested,"* in reference to the witnessing of wills, not because it adds one iota to the meaning of the latter term, as a matter of law or fact, but only to remove any possible doubt, which might otherwise arise, as to the purpose and intent

of the law, and thus to make more certain, clear and specific the need of actual subscription.

It is important to note that legislative construction, as shown by the context of various other sections of the statute found in the same enactment in which the one under consideration appears, and bearing on this subject, adds materially to the argument in support of our conclusion. These sections are here set forth in the order in which they appear in Mills' Ann. Stats., including the one in question, for convenience of inspection:

Section 4664 reads:

"All wills by which any property, real or personal, is devised or bequeathed, shall be reduced to writing and signed by the testator or by some one in his presence and by his direction, and *attested* in the presence of the testator by two or more witnesses."

Section 4667 provides that:

"If any beneficial devise, legacy or interest shall be made or given in any will, to any person subscribing such will as a witness to the execution thereof, such devise, legacy or interest shall, as to such subscribing witness  *  *  *  be null and void, unless such will be otherwise duly attested by a sufficient number of witnesses exclusive of such person, according to this act  *  *  * ."

Section 4681 says that:

"If, upon the hearing of such proof, it shall satisfactorily appear by the testimony of two or more of the subscribing witnesses to such will that they were present and saw the testator sign such will, and attested the same at his request,  *  *  * the court may admit the same to probate and record."

Section 4686 is as follows:

"Where any one or more of the witnesses to any will shall die or remove to some distant country,

\* \* \* it shall be lawful for the county or other court having jurisdiction of the subject-matter to admit proof of the handwriting of any such deceased or absent witness as aforesaid, \* \* \* "

These provisions must be considered and construed together. How can the conclusion be escaped that the legislature intended the word *"attested,"* in section 4664, should include certification by subscription, when, in at least two of the subsequent sections quoted above, they expressly refer to a subscribing witness to a will, and when the other quoted section provides for proof of the handwriting of a deceased or absent witness? If anything were wanting to settle the contention here, legislative construction of the significance of the term *"attested,"* through the medium of the context of these subsequent sections of the same act, sufficiently supplies such need.

The easy, natural and irresistible conclusion, upon every important consideration, including that of public protection, leads us to hold this codicil to have been insufficiently attested, under the requirements of our statute, and that the same was properly rejected by the court below. No other result may be reached except through a process of illogical, strained and unsupported reasoning. The judgment should be affirmed.    *Affirmed.*

CHIEF JUSTICE STEELE and Mr. JUSTICE WHITE concur.