## JOHANNA KROSCHEL v. HENRIETTA DRUSCH.[1]

### November 16, 1917.

### No. 20,550.

**Will — undue influence — finding sustained by evidence.**

    1. Will contest. The evidence sustains the finding of the trial court that the will was not procured by undue influence.

**Same — definition of attestation.**

    2. Attestation is the act of witnessing the execution of an instrument and subscribing the name of the witness in testimony of such fact.

**Same — knowledge of witnesses.**

    3. It is not necessary that attestation be formally requested by the testator. Whether it is necessary that the witnesses should know that the document is a will is not decided.

[1]Reported in 164 N. W. 1023.

**Same — finding of attestation — evidence sufficient.**

4. There is evidence that when one of the witnesses was called, he was told that he was to witness a testament, that he saw the testator and the other witness sign, and was told, in the conscious presence of the testator and within his hearing, that the instrument was the testator's will and he was asked to sign it as a witness, and that he then did so. This evidence was sufficient to sustain a finding of attestation under any definition of that term.

Johanna Kroschel petitioned the probate court for Brown county for the allowance of the last will and testament of Leo Drusch, deceased. Henrietta Drusch filed objections to the allowance of the will. From the order of the probate court denying the application for probate, Johanna Kroschel appealed to the district court for that county. The appeal was heard before Olsen, J., who made findings and reversed the judgment of the probate court. From the order of reversal Henrietta Drusch appealed. Affirmed.

*Alfred W. Mueller,* for appellant.

*Albert Hauser,* for respondent.

HALLAM, J.

Leo Drusch was an unmarried man of middle age. He had for some years employed his time either renting farms or working on farms for hire and had accumulated above $3,000 worth of property. He had a small house in Sleepy Eye. His mother, nearly 75 years old, lived in this house, and Drusch made his home there when not at work. His other relatives were a sister, Mrs. Kroschel, a woman of some means and married to a wealthy farmer, a brother, Albert, and seven children of a deceased sister. In June, 1916, Drusch discovered that he had an incurable disease. While in a hospital at Springfield, he himself wrote out a document which he supposed would direct the disposition of his property after his death. By its terms he indicated a wish that his mother inherit all his property. Later, and on July 6, Drusch was taken to his home in Sleepy Eye. His mother was there and his sister was there much of the time. On July 10 Mrs. Kroschel and her husband went to the office of Mr. Hauser, a lawyer in Sleepy Eye, and told him Drusch wanted a will drawn. Hauser asked if they knew the terms and was told he

wanted to leave his property to his mother for life with remainder to Mrs. Kroschel. Hauser drew the will accordingly and took it to the Drusch home. There is evidence that Hauser fully explained the will to Drusch in the presence of his mother and the Kroschels and that Drusch said that was the way he wanted it. Hauser then told them that another witness was needed. Some one suggested a neighbor, Mr. Zimmermann, and he was called. All being present, Drusch, sitting up in bed, signed the will and Hauser and Zimmerman signed as witnesses. Testator's mother contested the will. The trial court sustained the will. Contestant appealed.

1. It is conceded that deceased had sufficient mental capacity to make a will. Claim is made that the will was procured by undue influence exerted by Mrs. Kroschel and her husband. The trial court found that it was not. Undue influence which will avoid a will must be influence so exercised as to destroy the free agency of the testator and control the disposition of the property. In re Timothy Hess' Will, 48 Minn. 504, 51 N. W. 614, 31 Am. St. 665. The contested will evidenced a change of purpose on the part of deceased, the effect of which was to enlarge the rights of his sister, to diminish the interest of his mother and to cut off his brother and his deceased sister's children from all enjoyment of his property, even after his mother's death. It is true that the sister and her husband were much with deceased, and called the lawyer who drew the will and the witnesses who witnessed it. On the other hand, there is evidence, from which the court might find that the mother was acquainted with what was going on and acquiesced. There is also evidence that deceased had an intelligent purpose of placing his property beyond the reach of his brother. The evidence that there was any undue influence is entirely circumstantial and by no means conclusive. The finding of the trial court on this point is sustained.

2. A more serious question is the question whether the will was attested as required by law. The statute requires that a will must be "attested and subscribed in his presence by two or more competent witnesses." G. S. 1913, § 7250. This will was properly subscribed by the two witnesses but was it "attested" by them? The trial court found that it was. No question is raised as to the sufficiency of the attestation so far

as Hauser is concerned. The contention is that there was no attestation by Zimmermann.

Attestation is the act of witnessing the execution of an instrument and subscribing the name of the witness in testimony of such fact. 4 Cyc. 888; Burrill, L. Dict. International Trust Co. v. Anthony, 45 Colo. 474, 101 Pac. 781, 22 L.R.A.(N.S.) 1002, 16 Ann. Cas. 1087; 6 C. J. 553; White & Co. v. Magarahan, 87 Ga. 217, 219, 13 S. E. 509. "To constitute a legal and valid attestation the testator must either sign the will in the presence of the witnesses, or acknowledge his signature to them, or in some other way clearly and unequivocally indicate to them that he has signed and executed the same." Tobin v. Haack, 79 Minn. 101, 107, 81 N. W. 758, 761.

2. It is not necessary that the attestation be formally requested by the testator. Under the statute, no request is required. In re Allen's Will, 25 Minn. 39. Whether it is necessary that the witnesses should know that the document is a will, is a question upon which courts differ. Since attestation is generally regulated by statute, apparent differences in judicial opinions are in some cases due to variations in language of statutes. The greater number of cases arising under statutes like our own are to the effect that there may be an attestation of the execution of a will, though the attesting witnesses do not know its contents and do not know that it is a will. Thompson v. Thompson, 49 Neb. 157, 68 N. W. 372; Steele v. Marble, 221 Mass. 485, 109 N. E. 357; Thomas v. English, 180 Mo. App. 358, 167 S. W. 1147; In re Claflin's Will, 75 Vt. 19, 52 Atl. 1053, 58 L.R.A. 261; In re Lillibridge's Estate, 221 Pa. St. 5, 69 Atl. 1121, 128 Am. St. 723; Herring v. Watson, 182 Ind. 374, 105 N. E. 900; Nixon v. Snellbaker, 155 Iowa, 390, 136 N. W. 223; Allen v. Griffin, 69 Wis. 529, 35 N. W. 21; In re Silva's Estate, 169 Cal. 116, 145 Pac. 1015; 1 Schouler, Wills, 323, 326. In Tobin v. Haack, 79 Minn. 101, 106, 81 N. W. 758, 761, this court quoted this definition of attestation, taken from Swift v. Wiley, 1 B. Mon. 114, 117. "To attest a will is to know that it was published as such, 'and to certify the facts required to constitute an actual and legal publication," but it cannot be said that in the Tobin case the court decided the precise question whether disclosure of the nature of the instrument was necessary. It is not necessary to decide that question in this case, since if

disclosure of the nature of the instrument is necessary, there is evidence from which the court might have found that such disclosure was made.

4. No great formality is required. Such transactions are usually quite informal. Under a statute which required that the testator should declare his will in the presence of witnesses, it was held that, when enough is said or done in the presence and with the knowledge of the testator to give the witnesses to understand distinctly that the testator desires them to know that the paper produced is his will, which they are to attest as such, the statute is sufficiently complied with. Darnell v. Buzby, 50 N. J. Eq. 725, 26 Atl. 676. There is evidence that when Mr. Zimmermann was called in he was told that he was to witness "a testament," that he saw the testator sign the will and saw the other witness sign, and was then told, in the conscious presence of the testator and within his hearing, that the instrument was the testator's will and he was asked to sign it as a witness, and that the testator said nothing in dissent and apparently acquiesced. We think this was sufficient to sustain a finding of attestation, under any construction of that term.

Judgment affirmed.