(No. 12388.—Judgment affirmed.)

PETER F. KUEHNE, Exr., Appellee, vs. MARY MALACH
et al. Appellants.

*Opinion filed December 18, 1918.*

1. WILLS—*formal attestation clause is to some extent evidence
of the facts therein stated.* An attestation clause which is in due
form is some evidence of the facts therein stated, and may, under
some circumstances, prevail over the testimony of a subscribing
witness that some of the requisites stated in the attestation clause
as having been complied with were not, in fact, complied with.

2. SAME—*when circuit court may admit a will to probate.* The
circuit court, on appeal, may admit a will to probate where the
attestation clause is in due form and the signature of a deceased
subscribing witness is proven, even though the living subscribing
witness testifies that the testatrix did not sign the will or acknowl-
edge it in his presence and that no one requested him to sign the
will as a witness, where the testimony of such witness is so con-
tradictory and improbable as to warrant the belief that his denial of
the facts stated in the attestation clause signed by him was untrue.

3. SAME—*testamentary capacity shown to exist is presumed to
have continued.* Testamentary capacity of the testatrix shown to
exist a short time before the will was made. is presumed to have
continued unless the contrary is shown by sufficient evidence.

4. EVIDENCE—*testimony of witness may be so inherently im-
probable as to stand discredited.* There may be such inherent im-
probability' in the testimony of a witness as to authorize the court
or jury to disregard it, even though there is no contradictory tes-
timony by other witnesses.

APPEAL from the Circuit Court of Lee county; the
Hon. OSCAR E. HEARD, Judge, presiding.

JOHN E. ERWIN, for appellants.

WILLIAM L. LEECH, and JOHN P. DEVINE, for appellee.

Mr. JUSTICE CARTER delivered the opinion of the court:

An instrument purporting to be the last will and testa-
ment of Katherine Kuehne, deceased, was refused probate
by the county court of Lee county on January 8, 1917. An
appeal was taken to the circuit court of that county by the

executor, Peter F. Kuehne, appellee here, and the instrument was admitted to probate by that court as the last will and testament of the deceased. From that order of the circuit court this appeal has been taken.

The instrument in question was dated November 22, 1900, and recited that the maker was seventy-two years old. It directed the payment of her just debts and funeral expenses, and gave to her son, Peter F. Kuehne, who was named as executor without bond, a dwelling house and barn and real estate in Sublette, in said county, then occupied by her and Peter as a homestead, provided he should pay into the estate $2000. It further provided that after the payment of the debts and when said $2000 was paid into the estate the balance of the property should be divided equally among her six children, including Peter. If Peter elected not to pay said $2000, the will provided that all the property, including the homestead, should be divided equally among the six children. The attestation clause of the instrument reads as follows: "The foregoing writing was signed, sealed, published and declared by the testator on the date above named as and for her last will and testament in the presence of us, who in her presence and in the presence of each other and at her request have signed our names as witnesses hereto." The witnesses were Joseph Bettendorf and Charles H. Wooster. Wooster was the lawyer who drew the will. He was not living at the time the will came up for probate but his signature was proven, and no question is made as to this proof being sufficient to justify the admission of the will to probate so far as his signature as a witness is concerned. The sole question in dispute arises from the testimony of the witness Bettendorf. He testified that he was about seventy years old; that he had known the testatrix many years, and that Peter Kuehne, the son, came to his house and requested him to come over and sign the will for his mother; that he went into the kitchen of the Kuehne home and Wooster was there, and they had a

conversation as to some legal business which Wooster, as witness' attorney, was looking after for him; that Mrs. Kuehne came in and sat down in a chair at the table, with her back towards the witness, and remained there a minute or so and then got up and her son, Peter, assisted her to another room, and that was the last the witness saw of her; that after she left the room Wooster turned around and said to witness, "Put your name down there," "and I replied, 'I guess it is nothing that concerns me very much,' and he laughed and said 'No;' then I signed it and so did he." This witness was questioned at length by counsel and by the presiding judge on the hearing in the circuit court. It is argued by counsel for appellants that in view of his testimony the circuit court should have refused to probate the will, while counsel for appellee argue most earnestly that Bettendorf's testimony was so contradictory as to be unworthy of belief, and that the court was fully justified, on the record, in admitting the will to probate.

The record shows that a son of Joseph Bettendorf was married to a daughter of the testatrix, and that this daughter and her husband are contesting the probate of this will, as are apparently the other children of the testatrix except Peter Kuehne. While Bettendorf testified that he did not see Mrs. Kuehne sign the will, it is evident from his testimony that when she sat down at the table he could have seen her plainly if he had wanted to do so. There is testimony to the effect that the signature to the will is in her handwriting, written in German. It is manifest from the testimony in the record that the parties had gathered at the Kuehne home for the purpose of witnessing the will just before the two witnesses signed the instrument. There is no question raised as to the attesting clause being in accordance with the law. Bettendorf testified that he was engaged in conversation with Wooster about a legal matter in which Wooster was advising him, at the time the testatrix was in the room, and that he therefore paid no attention to what

she was doing, and that, so far as he could see, Wooster also paid no attention. He testified that Wooster was a capable lawyer, and the record shows that he had been State's attorney of Lee county for at least two terms. Bettendorf also testified that no one told him at the time he was signing the document that it was the last will of the testatrix and that no one requested him to sign as a witness in the presence of the testatrix, although it is clear from his testimony that he understood he was called to the house to witness the will, and he also testified that he had witnessed other wills and was somewhat familiar with the formalities necessary to be observed by witnesses in such cases.

While the precise question here presented has never been passed on by this court, we think the principle involved has been before this court in more than one case. In *In re Estate of Kohley,* 200 Ill. 189, when one witness (Judson) was called to testify he stated that he signed the attestation clause but that the testatrix did not sign the will in his presence and that he did not see her sign it, and that she did not in any manner, by word or act, acknowledge the paper to be her will, act or deed; that he could not recollect any conversation he had with the testatrix or that she had said anything; that he was only in the room long enough to sign his name and then turned around and walked out. The court said in discussing this point (p. 191): "This testimony would be clearly insufficient, on an application to the county court, to prove the due execution of the will, but on the appeal proponent was not limited to the testimony of the subscribing witnesses, and was entitled to introduce any evidence which would be competent to establish the will in chancery." And also on page 194: "The statements of the attestation clause are to have due weight, and the mere inability of an attesting witness to recollect the facts therein stated will not defeat the probate." It was held in that case that the proof, and the presumption arising from the attestation clause, justified the probating of the will.

In *Hutchison* v. *Kelly,* 276 Ill. 438, this court said
(p. 446) : "One of the witnesses made the declaration, un-
der oath, to all the circumstances required for the admis-
sion of the will to probate. The other repudiated the state-
ment signed by him, saying that he had not read it, and
denied that the testator acknowledged the will or was pres-
ent when the witnesses signed as attesting witnesses." The
court held that the will was properly probated.

In *Gould* v. *Theological Seminary,* 189 Ill. 282, this
court said in discussing a similar question (p. 286) : "All
the authorities concur in holding that such attestation is
*prima facie* evidence of the due execution of the will and
will often prevail over the testimony of witnesses who give
evidence tending to show that some of the requisites were
omitted. 'It seems to be well settled that in the absence of
all proof, the witnesses being deceased or not in a condition
to give testimony, the presumption *omnia rite acta* will
arise, as in ordinary cases. * * * And where the attes-
tation clause contains all the particulars of a good execution
it will always be *prima facie* evidence of due execution, and
will often prevail over the testimony of witnesses who give
evidence tending to show that some of the requisites were
omitted.'—(1 Redfield on Wills,—4th ed.—238.)" This
same doctrine of Redfield was quoted with approval by this
court in the recent case of *Thompson* v. *Karme,* 268 Ill.
168. This court has in several other cases held that the cer-
tificate of the oath of subscribing witnesses on the probate is
not overcome by the fact that such witnesses, when testify-
ing in the circuit court, failed to remember certain requisites
to the due execution of the will. *Britton* v. *Davis,* 273 Ill.
31 ; *Dubach* v. *Jolly,* 279 id. 530. See, also, to the same
effect, *King* v. *Westervelt,* 284 Ill. 401.

On the question of the due execution of the will the
testimony of subscribing witnesses is not necessarily con-
trolling, though their testimony is often entitled to great
consideration from the fact that they have superior oppor-

tunities for having knowledge of the facts. While a subscribing witness is competent to impeach the due .execution of the will, such testimony is received with caution and is rightly viewed with suspicion. (14 Ency. of Evidence, 422, and cases cited; 40 Cyc. 1309G, and cases cited.) "The Statute of Wills requires a will to be attested by two or more credible witnesses, and in case of the death of a witness, proof of his handwriting is admissible with the same effect as if he had appeared and testified in his own person." (*O'Brien* v. *Bonfield,* 213 Ill. 428.) The effect of this provision is to make the certificate of attestation signed by a deceased witness evidence, to some extent, of the facts stated in it. Necessarily the force of this evidence will depend greatly on the circumstances of the case. If the deceased witness was in the habit of drawing and looking after the execution of wills and was familiar with the law on the subject, his certificate that the requisite formalities were observed would be entitled to much greater weight than if the witness were shown to have been an uneducated man and ignorant of such legal requisites. (*Orser* v. *Orser,* 24 N. Y. 51.) This court in *Schofield* v. *Thomas,* 236 Ill. 417, quoted with approval, on page 422, from *Orser* v. *Orser, supra:* "A will duly attested upon its face, the signatures to which are all genuine, may be admitted to probate although none of the subscribing witnesses are able to swear, from recollection, that the formalities required by the statute were complied with, and even although some of them should swear positively that they were not, if the other evidence warrants the inference that they were." Where the testimony of a living witness amounts to a positive denial of a certificate of attestation, the relative weight to be given the conflicting testimony would depend very largely on the apparent integrity and intelligence of the witnesses and the circumstances of each particular case. Where a witness who has subscribed to a will stating in the attestation ·clause all the facts required for a proper attesting of the will testifies on

the hearing to a contrary state of facts, he thereby assumes an attitude which is not only inconsistent with the position that he has voluntarily taken but one that may well be argued to be suggestive of fraud and double dealing. *Stevens v. Leonard,* 154 Ind. 64.

The testimony of the witness Bettendorf as to the facts in this record is somewhat extraordinary, to say the least. He admits that he was called to the house of the testatrix to witness a will, although he afterwards attempts to modify that statement by asserting that he did not know that it was a will and that no one called his attention to the fact that the paper that he was signing was a will. A reading of the testimony, we think, fully justified the circuit court in finding that he understood he was asked by the son to witness a will, and that he and Wooster, as well as Mrs. Kuehne, both understood that they were signing the document as witnesses. It would also seem extraordinary that attorney Wooster, who is conceded to have been a lawyer of experience and ability, should have allowed the will to be executed and attested in the manner testified to by Bettendorf, as from the evidence in the record it appears conclusively that Wooster had drawn this will and was at testatrix's house to have it properly signed and attested.

The argument of counsel for appellants that as there was no positive testimony contradicting that of Bettendorf as to the execution of the will except the attestation clause, the circuit court was necessarily bound to follow the testimony of Bettendorf and refuse probate we consider unsound. While it is true the general rule is that positive testimony of a witness, uncontradicted and unimpeached either by positive or uncontradicted evidence, cannot be disregarded, it is also true that there may be such an inherent improbability in the testimony of the witness as to induce the court or jury to disregard it, even in the absence of conflicting testimony. He may be contradicted by the facts he states as well as by adverse testimony, and there may be

so many omissions in the account of the particular transactions, or in his own conduct, as to discredit his whole story. (*People* v. *Davis*, 269 Ill. 256, and cases there cited.) A review of the testimony of Bettendorf, as found in the record, shows it to be so unreasonable and on its face so contradictory, even without the contradiction over his own signature found in the attestation clause, that we believe it does not present the true facts in many particulars.

Counsel for appellants further argues that the evidence in the record shows that Mrs. Kuehne was incompetent to execute the will. He bases this upon the testimony of Bettendorf. All he testified to on this point was that he thought the testatrix was a little childish and that she was old when she made the will, but he stated that he thought she knew her children, her property and the natural objects of her bounty. Two witnesses testified that they considered her of sound mind and memory, and while it is true, as argued by counsel for appellants, that these witnesses did not testify as to her mental condition on the particular day the will was executed, they had known her for years. One of them had seen her after she executed the will. Old age, in itself, does not necessarily mean the want of testamentary capacity. (*Waters* v. *Waters*, 222 Ill. 26.) Measured by the rule laid down in the *Waters case* and other cases decided by this court, the testimony is of a nature to warrant us in finding that testatrix had sufficient testamentary capacity to make and execute the will. There can be no question from this record that a very short time previous to the execution of the will she was of testamentary capacity. The mental condition of the testator once shown to exist is presumed to continue until the contrary is shown. *Todd* v. *Todd,* 221 Ill. 410.

As to both questions raised by appellants, the trial judge saw and heard the witnesses and had advantages which we do not possess in judging of the weight that should be given to their testimony. Under the law and established rules of

practice the conclusions of the trial judge should not be disturbed unless it clearly appears from the record that such conclusions are wrong. In view of the character of the testimony of the witness Bettendorf and his subsequent oral contradiction of his written statement in the attestation clause, this rule as to the trial judge being in better position to judge of the credibility of witnesses applies with particular force to the facts in this case. The evidence in the record justified the conclusion reached by the chancellor.

The judgment of the circuit court will therefore be affirmed.                              *Judgment affirmed.*