## JOSIE R. LOTT v. W. H. LOTT AND ANOTHER.[1]

March 2, 1928.

No. 26,408.

**When will of resident of another state is valid upon his dying while a resident of Minnesota.**

1. Where a testator executes a will in another state while a resident therein and dies a resident of this state, it is valid here if executed as required by the laws of either state.

**When such will is presumed to have been duly executed and burden is on contestants to prove the contrary.**

2. Where it bears the genuine signature of the testator and of the witnesses, and the attestation clause is full and complete, it is presumed to have been duly executed, and the burden is on contestants to prove the contrary.

**Discredited testimony of subscribing witness may not overcome the presumption.**

3. The testimony of a subscribing witness may be insufficient to overcome the presumption, especially if facts appear discrediting such testimony.

**Proponent not concluded by testimony of subscribing witnesses.**

4. The proponent, being required to call the subscribing witnesses, is not concluded by their testimony and may prove due execution of the will by any available evidence.

**When proponent has right to cross-examine subscribing witness.**

5. Where a subscribing witness impeaches the recitals of the attestation clause subscribed by him, the proponent has the right to cross-examine him.

**When it may be presumed testator has signed the will.**

6. Where the testator himself produces the will and asks the witnesses to sign as such, it may be presumed that he has signed it, although he does not so state and the witnesses do not see his signature.

[1]Reported in 218 N. W. 447.

**Effect of misapprehension of applicable law by trial court.**

7. Through a misapprehension of the applicable law the right of cross-examination was unduly restricted, the testimony of subscribing witnesses was deemed controlling, and other evidence was not given due consideration.

Wills, 40 Cyc. p. 1074 n. 57; p. 1121 n. 48; p. 1272 n. 58; p. 1273 n. 61; p. 1303 n. 61; p. 1309 n. 91.
Witnesses, 40 Cyc. p. 2561 n. 71.

See note in 14 L.R.A.(N.S.) 255; 28 R. C. L. 369.
See note in 38 L.R.A.(N.S.) 161; L. R. A. 1915B, 87; 28 R. C. L. 127.
See note in L. R. A. 1916C, 1218; 28 R. C. L. 371.

The will of Harrison C. Lott was disallowed by the probate court for Lyon county. Upon appeal to the district court by his widow, Josie R. Lott, the order of the probate court was affirmed. From an order of the district court, Enersen, J. denying her motion for a new trial, she appealed. Reversed.

*Murphy & Johanson, M. E. Mathews* and *Charles L. DeReu,* for appellant.

*James H. Hall* and *A. L. Bromen,* for respondents.

TAYLOR, C.

Harrison C. Lott lived for many years on a rented farm near Bloomington in the state of Illinois. In 1899 his wife died. In 1902 he married again. In 1915 he and his second wife removed from Illinois to Lyon county in this state where he died in November, 1924, at the age of 76 years. At the time of his second marriage he was considerably in debt, and his second wife aided largely in acquiring the property which he possessed at his death. His will, executed September 28, 1909, in the state of Illinois, gives his property to her. When the will was presented to the probate court of Lyon county for allowance, its admission to probate was opposed by children of his first wife on three grounds: That he lacked mental capacity to make it; that he had been induced to execute it by the undue influence of his wife, the proponent; and that it was not executed in the manner required by the laws of Illinois or the

laws of this state. The probate court disallowed it, and the proponent appealed to the district court. At the trial in district court the contestants conceded that there was no evidence which would warrant a finding of mental incapacity or of undue influence, and expressly withdrew and abandoned those charges, and admitted that the only question for the court to determine was whether the will had been executed in the manner required by law. The district court directed judgment affirming the order of the probate court disallowing the will, and the proponent appealed from the order denying a new trial.

On September 28, 1909, Mr. Lott went to Bloomington and had the will prepared ready for execution. On returning home he went to the house of a neighbor named Percy who lived across the road on an adjoining farm and told Mr. and Mrs. Percy that he had made a will and asked them to come over to his house and witness it. They went over a little later the same afternoon or evening. Those present were Mr. and Mrs. Lott and Mr. and Mrs. Percy. When the Percys arrived Mr. Lott went into an adjoining room and returned with the will, which he laid upon a small table or writing desk and procured a pen and ink. He pointed out the lines where the witnesses were to sign it and both Mr. and Mrs. Percy signed on those lines. Mr. Lott then picked it up and went into the adjoining room with it. After his death the will was found in his safety deposit box at the bank in an envelope bearing the indorsement in his own handwriting, "Will of Harrison C. Lott." It bears the genuine signature of the testator and of the two witnesses, and appears upon its face to have been executed in due form in all respects. The foregoing facts are unquestioned.

The will is in typewriting. It is short and wholly upon the front page of a single sheet of typewriting paper. A colored paper cover is attached to the back of this sheet to protect it. At the bottom of the will proper and slightly below the middle of the sheet there is a line for the signature of the testator, and at the end of this line is the word, "(Seal)". The testator's name is written upon this line. Below this is the attestation clause in full form, and below that two lines for the signatures of the witnesses. They

signed upon these lines. The will is folded twice from the bottom in the usual manner of folding legal papers. If the paper is laid upon a table folded and the top quarter then turned back, a few lines at the beginning of the will and the lines bearing the signatures of the witnesses are exposed, but the body of the will and the line bearing the signature of the testator are completely covered. Only by unfolding the lower half of the sheet can the name of the testator be seen.

The testimony of both Mr. and Mrs. Percy was taken by deposition in Illinois where they resided. Mrs. Percy testified in substance that Mr. Lott came to their house and said he had made a will and asked her and her husband to come over and sign it as witnesses; that they went over shortly thereafter; that Mr. Lott placed the paper on the table saying it was his will and pointed out where they were to sign; that Mr. Percy signed it first and then she signed it; that it was so folded that she did not see any of the will nor the line with the word "Seal" at the end; that she does not remember seeing Mr. Lott's signature and does not know whether he had signed it; and that he did not sign it while she was there and did not say he had signed it.

Although the testimony of Mr. Percy had been taken by deposition, the contestants procured his attendance at the trial. He testified in substance that Mr. Lott came to their house and asked him and his wife to come over and sign a will; that they went over shortly thereafter; that Mr. Lott went into another room and brought out a paper which he laid on the table and procured pen and ink; that he said, "Here, John, sign" and pointed to the place for him to sign; that he and his wife both signed it; that Mr. Lott picked it up and went into the other room with it; that he saw the attestation clause but did not read it; that this clause was all that he saw on the paper; that he saw the blank line above the attestation clause with the word "Seal" at the end; that Mr. Lott's name which now appears on that line was not there at that time; and that Mr. Lott did not state what the paper was and did not sign it while he was there. He admitted that Mrs. Lott, her attorney Rolland Mathews, Jesse Lott, a son of Mr. Lott, and O. E. Helmick came to

his house in Illinois a day or two before he gave his deposition, and that he told Mrs. Lott and Mr. Mathews at that time that the paper he signed was folded so that it covered the typewriting and that he saw no typewriting on the paper. Mr. Mathews had the original will with him, and placed a blank sheet of paper upon it on which he drew lines for the signatures in the same relative positions they occupied on the will and asked Mr. Percy to fold this paper in the same manner the will was folded when he signed it. Mr. Percy folded the paper so that it entirely concealed the line for the signature of the testator. At the trial he was questioned concerning testimony given in his deposition which did not accord with that given at the trial. We give the following brief excerpt therefrom:

Q. "You were asked in Bloomington before Miss Mabis when you were testifying in May, 1925: 'Did you see any writing at all?' You were asked that, were you not?" A. "Yes, sir." Q. "And you said: 'I seen my own name.' Is that the way you answered it?" A. "I seen my own name below that typewriting." Q. "You answered it, 'I seen my own name,' didn't you?" A. "Yes, sir." Q. "And then you were asked, 'And your wife's,' and you answered, 'Yes'?" A. "Yes, sir." Q. "Then you were asked this question, were you not: 'Did you see any other writing on that paper whatsoever? Do you remember of anything else that you saw on this paper that you signed? Did you see any of the typewriting that day?' Were you asked that?" A. "Yes, sir." Q. "And you said in answering, did you not, 'No, I did not.'?" A. "Yes, sir."

The court found that the witnesses did not see Mr. Lott sign the will nor see his signature upon it, and that in fact he did not sign it until after they had departed. The vital finding that the testator did not sign the will until after the witnesses had departed rests upon the testimony given by Mr. Percy at the trial that when he signed the will, 17 years before, he saw the line upon which the name of the testator now appears and that there was no name then upon that line.

The testator having been a resident of this state for nine years preceding his death and the property involved being within this

state, his will, although executed in the state of Illinois while he was a resident of that state, is admissible to probate if executed in accordance with the laws of this state. And by virtue of G. S. 1923, § 8738, it is also admissible to probate if executed as required by the laws of the state of Illinois, although not as required by the laws of this state. The requirements of the Illinois statute are nearly the same as the requirements of our statute, but as construed by the Illinois court may not be quite so restrictive.

The attestation clause is full and complete and, among other things, recites that the will was signed and declared by the testator as his last will and testament in the presence of the subscribing witnesses.

Where the attestation clause is full and complete and the signature to the will is the genuine signature of the testator and the signatures to the attestation clause are the genuine signatures of the witnesses, the will is presumed to have been duly executed, and those attacking it on the ground that it was not executed with the formalities required by law have the burden of proving that fact. Baxter v. Baxter, 136 Minn. 59, 161 N. W. 261; Hennes v. Huston, 81 Minn. 30, 83 N. W. 439; Gould v. Chicago Theological Seminary, 189 Ill. 282, 59 N. E. 536; Kuehne v. Malach, 286 Ill. 120, 121 N. E. 391; Mead v. Trustees of Presbyterian Church, 229 Ill. 526, 82 N. E. 371, 14 L.R.A.(N.S.) 255, 11 Ann. Cas. 426; Rupp v. Jones, 289 Ill. 596, 124 N. E. 560; Hart v. Hart, 290 Ill. 476, 125 N. E. 366; Matter of Will of Cottrell, 95 N. Y. 329; Will of O'Hagan, 73 Wis. 78, 40 N. W. 649, 9 A. S. R. 763; Will of Maresh, 177 Wis. 194, 187 N. W. 1009; In re Goodridge, 119 Me. 371, 111 A. 425; Moore v. Walton, 158 Ga. 408, 123 S. E. 812; In re Seymour's Will (N. J.) 114 A. 799; McCurdy v. Neall, 42 N. J. Eq. 333, 7 A. 566; Holyoke v. Sipp, 77 Neb. 394, 109 N. W. 506; Newell v. White, 29 R. I. 343, 73 A. 798.

In Will of O'Hagan, 73 Wis. 78, 40 N. W. 649, 9 A. S. R. 763, the Wisconsin court said:

"Such attestation is of itself not only *prima facie* evidence that the instrument was properly executed, but it raises a strong presumption that it was so executed. * * * To defeat probate, the

strong presumption of regularity thus appearing upon the face of the instrument must be overcome by proof."

In Kuehne v. Malach, 286 Ill. 120, 125, 121 N. E. 391, the Illinois court said:

"While a subscribing witness is competent to impeach the due execution of the will, such testimony is received with caution and is rightly viewed with suspicion."

And further [at p. 127] said:

"A review of the testimony of Bettendorf [subscribing witness], as found in the record, shows it to be so unreasonable and on its face so contradictory, even without the contradiction over his own signature found in the attestation clause, that we believe it does not present the true facts in many particulars."

In 14 Enc. of Ev. 422, it is said:

"While a subscribing witness is competent to impeach the will such testimony is received with caution and justly viewed with suspicion."

Where facts and circumstances are shown which tend to corroborate the recitals of the attestation clause, or to cast discredit upon the testimony of witnesses who stultify themselves by denying their formal written assertion made at the execution of the will and upon which the testator had the right to rely, such denials may well be deemed insufficient to overcome the presumption of due execution arising from the attestation clause and the fact that the signatures of both the testator and the witnesses are genuine.

Although the testimony of Mr. Percy had been taken by deposition, the contestants procured his attendance at the trial. As he was present, the proponent was required to call him as a witness. G. S. 1923, § 8756. But in calling him at the command of the statute, the proponent did not make him her witness nor become bound by his testimony; and she could controvert his testimony and show by any available evidence that the will had been properly executed. Madson v. Christenson, 128 Minn. 17, 150 N. W. 213, L. R. A. 1916C, 1214, and cases collected in note following this case

in Ann. Cas. 1916D, 1104; 40 Cyc. 1303. Where a subscribing witness gives testimony impeaching the recitals in the attestation clause subscribed by him, he may be examined by the proponent as upon cross-examination.

Under the Illinois law where the testator presents the will to the witnesses and procures them to sign it as subscribing witnesses, it is presumed that he has signed it, although he did not so state and the witnesses did not see him sign it nor see his signature upon it. Rupp. v. Jones, 289 Ill. 596, 124 N. E. 560; Gould v. Chicago Theological Seminary, 189 Ill. 282, 59 N. E. 536; Webster v. Yorty, 194 Ill. 408, 62 N. E. 907. Also see In re Dougherty's Estate, 168 Mich. 281, 134 N. W. 24, 38 L.R.A.(N.S.) 166, Ann. Cas. 1913B, 1300. The rule is much the same in this state. The statute requires them to attest the will. Notwithstanding what is said in Tobin v. Haack, 79 Minn. 101, 81 N. W. 758, it does not require them to see the testator's signature nor know that it has been affixed. That fact may be presumed from the fact that he produces the will and asks them to sign it as witnesses. Hennes v. Huston, 81 Minn. 30, 83 N. W. 439; Baxter v. Baxter, 136 Minn. 59, 161 N. W. 261; Kroschel v. Drusch, 138 Minn. 322, 164 N. W. 1023.

Whether the will was executed in the manner required by law was a question of fact, and where there is credible evidence reasonably tending to support the findings of fact they will not be disturbed merely because the appellate court may think that they are against the weight of evidence. But where the record discloses facts and circumstances which cast discredit upon the evidence supporting the findings, and also indicates that by reason of a misapprehension as to the legal effect given to such evidence by the applicable law it was deemed to be of controlling force, and that the opposing evidence was not given due consideration for that reason, it is the duty of the appellate court to correct the error in law and to require that in determining the fact all the evidence be given the consideration to which it is entitled.

The contestants insisted that Mr. Percy was the witness of the proponent because she had called him as a witness, and many of the rulings show that they were made on the theory that he was her

witness; and that in examining him she was subject to the restrictions imposed upon a party examining his own witness. Even the rules applicable in such cases were applied with considerable strictness. It appearing that he was an adverse witness called because, being present, the statute required him to be called, she had the right to cross-examine him. This right was unduly restricted throughout the trial. We mention only one matter as indicating the nature of the restrictions. Mr. Percy plainly endeavored to convey the impression that he did not know that the instrument which he signed was Mr. Lott's will. The proponent sought to elicit from him by various questions, asked at various times and in various forms, that he did know it was a will. The contestants objected to these questions, and the objections were uniformly sustained. The questions were permissible.

Mrs. Lott was present at the execution of the will although she took no part therein. She was correctly permitted to testify that Mr. Lott signed the will himself before asking the witnesses to sign it; but her testimony that Mr. Percy immediately before signing as a witness asked, "Who drawed up that will?" offered for the purpose of showing that he knew it was a will at the time he signed it, was erroneously excluded. Her testimony, or the most of it, as to the statements made to her and Mr. Mathews by Mr. Percy at his house before the taking of the depositions was also excluded. Several of these rulings were justifiable however on the ground that a sufficient foundation for the impeaching questions had not been laid. Mr. Mathews died before the present trial, but his testimony taken at a former hearing was offered and was admissible. Objections were interposed and the court reserved its ruling upon them and apparently omitted to make any formal ruling.

In a memorandum attached to the findings, the court expressed the opinion that the decedent undoubtedly intended his wife to have the property, but that the case of Tobin v. Haack, 79 Minn. 101, 81 N. W. 758, was controlling, and that he felt that there was "such failure to follow the requirements of the statutes as compels the within findings."

We are led to the conclusion that the court looked upon the testimony of Mr. Percy as binding upon the proponent and upon the court, and felt constrained to find therefrom that the will had not been executed by the testator as required by the statute; that in consequence of an erroneous view of the applicable law, induced doubtless by language used in the Tobin case, although that language has been limited in later cases, the court gave undue and controlling force to that testimony and failed to consider the other evidence in its proper relation thereto; and that such erroneous view of the law affected the result to such an extent that there should be a new trial.

Order reversed and a new trial granted.