IN RE ESTATE OF HANS JAKOB JENSEN.
DAGMAR MOLGAARD, RESPONDENT.[1]

February 5, 1932.

No. 28,735.

[1]Reported in 240 N. W. 656.

*Ole Ostensoe,* for appellants.
*Johnson & Hoel,* for respondent.

DIBELL, J.

On appeal from the probate court of Lincoln county the district court upon a trial de novo made findings and conclusions directing the admission to probate of the will of Hans Jakob Jensen, deceased. Jensen's four sons, who opposed the will, appeal from the order denying their motion for a new trial. The respondent is Dagmar Molgaard, a stepdaughter of Jensen, the daughter of his second wife, who predeceased him by a few years. No others are interested.

■ The issue was upon the decedent's testamentary capacity. The will gave $4,000 to Dagmar Molgaard and the residue to the decedent's four sons in equal portions. The value of the estate is $25,000.

The will was drawn by Dr. Henrik Tillisch, the decedent's physician, and was witnessed by him and the lady superintendent of the Wesley Hospital in Brookings, a short distance over in South Dakota, where the decedent was when it was executed on December 16, 1930, and where he died on December 27, 1930. The attestation clause was immediately below the signature of Jensen, was signed by the two attesting witnesses, and was in the following form:

"We hereby acknowledge the above signature was made in our presence & in the presence of each other."

The testimony of the two attesting witnesses tended in some degree to impeach the will. They testified at the trial in the district court that they thought when they witnessed the will that the testator was mentally competent, but that they had changed their minds and were of the opinion that he was not of testamentary capacity.

The rule is that the testimony of an attesting witness which impeaches the will upon the ground of mental incapacity of the testator is subject to close scrutiny and should be viewed and weighed with caution. Some of the cases are more exacting than indicated. Lowe v. Jolliffe, 1 Wm. Blackstone, 364, in connection with which see The King v. Nueys, 1 Wm. Blackstone, 415; Scribner v. Crane, 2 Paige (N. Y.) 147, 21 Am. D. 81; Loughney v. Loughney, 87 Wis. 92, 58 N. W. 250; Southworth v. Southworth, 173 Mo. 59, 73 S. W. 129; Stevens v. Leonard, 154 Ind. 67, 56 N. E. 27, 77 A. S. R. 446; Kuehne v. Malach, 286 Ill. 120, 121 N. E. 391, and cases cited. The principle is supported in Lott v. Lott, 174 Minn. 13, 218 N. W. 447. And so are the texts. 14 Enc. Ev. 422; 2 Wigmore, Ev. (2 ed.) § 1302; 1 Underhill, Wills, § 213; 1 Alexander, Wills, § 380.

Attesting witnesses are traditionally and for practical reasons preferred witnesses in the sense that they may testify without foundation laid. 1 Wigmore, Ev. (2 ed.) § 689; 4 Id. § 1936; Geraghty v. Kilroy, 103 Minn. 286, 114 N. W. 838. In Williams v. Spencer, 150 Mass. 346, 23 N. E. 105, 5 L. R. A. 790, 15 A. S. R. 206, and other cases there cited, it is said that the testimony of the witnesses which is admissible is as to the opinion which they formed at the time of the execution—a question not presented by the record or briefs and unnecessary of pursuit here. And in referring to the admissibility of the testimony of attesting witnesses and their duty to observe the testamentary capacity of the person signing the will, Faris, J. in Thomasson v. Hunt (Mo. Sup.) 185 S. W. 165, 167, said:

"It is said that the odor of admissible sanctity adheres to Dr. Williams' opinion of the condition of this testator, because he was an attesting witness, and for that it was his duty to closely observe his condition. The answer may well be that it was likewise his duty not to attest the will of a mentally incompetent person."

■ On January 2, 1931, 17 days after the will of Jensen was drawn and six days after his death, Dr. Tillisch wrote a letter to the executor nominated in the will in response to an inquiry. The

receipt of this letter in evidence is asserted to be error. In it the doctor said:

"That he [referring to the testator] discussed with me the amount of $4,000 to be paid to his stepdaughter. I suggested that this was quite a little in proportion to what he had. However he insisted that this was what he wanted. I did not ask him the details as to how he expected the money would be paid, as I merely followed his instructions in the matter. This will was drawn before he had his congestion of the lung which killed him, and he was no doubt of sound mind. * * * We did not know at the time the will was drawn that death was so close at hand or I would have had an attorney draw the will."

The assertion of mental competency was in harmony with the opinion of the doctor at the time the will was drawn on December 16, 1930, and at variance with his later opinion, and was competent. The doctor testified that what he stated in it was true; and a consideration of it might be helpful to the trial court in reaching a right conclusion upon the issue of testamentary capacity at the date of the will. In Lott v. Lott, 174 Minn. 13, 218 N. W. 447, the opinion notes that the statute, G. S. 1923 (2 Mason, 1927) § 8756, requires the attesting witnesses to be called if within the state, and this was in substance the rule at common law; and, when so called, if they dispute the will which they have attested, they may be cross-examined by the party supporting the will. The letter was properly admitted.

■ Dagmar Molgaard testified by deposition. Objection is made to her testimony upon the ground of immateriality. The rule is settled that the injustice or unreasonableness of a will, when there is evidence impeaching the testator's capacity, may be received for the purpose of throwing some light upon the issue. Waring v. Waring, 6 Moore P. C. 341, 13 Eng. Rep. 715; Hodge v. Rambo, 155 Ala. 175, 45 So. 678; In re Estate of Martin, 170 Cal. 657, 151 P. 138, and cases cited; Crawfordsville Tr. Co. v. Ramsey, 178 Ind. 258, 98 N. E. 177; In re Williams' Estate, 52 Mont. 192, 156 P. 1087, Ann. Cas. 1917E, 126. And, upon the same principle, when there

is evidence against capacity, evidence showing that the will is a natural, reasonable, and likely one, under all the circumstances, is competent for what light it throws on testamentary capacity. Brereton v. Glazeby's Estate, 251 Mich. 234, 231 N. W. 566. And see Hammond v. Dike, 42 Minn. 273, 44 N. W. 61, 18 A. S. R. 503. Such evidence is not controlling and may not be persuasive. In itself it does not prove or disprove capacity; but a trier of fact, when the testator's competency is in question, may benefit by knowing the relation of the testator to those who naturally would appeal to his bounty and whether the disposition was a natural and likely one or the reverse. The rule should be applied cautiously. It should be understood that the testator may make an unjust, unreasonable, and unfair will if he chooses. He may dispose of his property as freely by will as he may give it in his lifetime. Nor does the fairness and reasonableness of the disposition prove competency or the opposite. Only when there is evidence upon the issue may such facts be used for the light they give.

The stepdaughter testified as to her early life. Her father died before she was born. Two years after his death her mother married Jensen. She lived in Lincoln county with the family from that time until she was 24 years old. She and her four half brothers, the contestants, grew up together. She had limited schooling. On the farm she did the work of a farm hand and did the rough chores about the house and barn. She received nothing except her board and room and clothes. She and the boys helped make the farm which is the subject of disposition by the will. She received $1,000 from the estate of her father. This was loaned to her stepfather and put into the building of a house, and not quite all was repaid her. Her testimony was competent. It was proper to show in a general way the relationship and surroundings of the testator and his beneficiaries. It bore upon the naturalness of the will. The trier of fact might think that the circumstances which the stepdaughter narrated would appeal to the testator when he came to a final disposition of his property and that they helped support the proof of competency. The disposition was nearly equal between the

boys and the stepdaughter. She was the oldest. Naturally the testator would prefer that his sons have the land and that the stepdaughter, if she was to be remembered, be given money.

■ The final question is the sufficiency of the evidence to sustain the finding of testamentary capacity.

The will was made on December 16, 1930. The testator died on December 27, 1930. He was suffering from kidney and heart trouble. He had rational and irrational spells. When rational he was intelligent and of proper capacity; and when irrational he talked foolishly and to no purpose. The doctor testified that at the time the will was executed he was of the opinion that the deceased was of testamentary capacity; but that upon further reflection and because of happenings afterwards he changed his view and was of the opinion, when he testified in court, that he was not competent. No definite nor persuasive reason for his change of opinion is given. No bad faith is charged against him. It may be that his opinion changed because of the increased frequency of the decedent's irrational periods. His opinion had not changed on January 2, 1931, 17 days after the will was drawn and six days after the testator's death, for he then wrote the nominated executor that the deceased insisted that the will was as he wanted it, that is, that there should be a $4,000 gift to his stepdaughter; and that "he was no doubt of sound mind." The testator asked the doctor to draw the will on the afternoon of December 15, 1930. He declined because the decedent was irrational. On the morning of the next day, the 16th, he drew the will. Decedent was then rational, and that is why he responded favorably to the testator's request. He believed then that he had mental capacity. His view did not change earlier than January 2, 1931, 17 days afterwards; and just when the change came the record does not show. The doctor's attitude is not readily explained.

The superintendent of the hospital, an experienced lady nurse, was of the opinion at the time the will was made that the decedent was competent. She said he was rational. Her testimony at the trial relative to a changed view is confused and uncertain, though

we take it that she intended to say that her view had changed; but at the most it is a faint echo of the doctor's changed opinion.

The trial court in a helpful way reviews the testimony in his memorandum with the applicable law in mind. The will is a simple disposition of the decedent's property. The finding of testamentary capacity is satisfactory. A different one would be surprising. It brings a wholesome result.

Order affirmed.

