## IN RE ESTATE OF EMILY COLEMAN.
### CHICAGO AVENUE BOYS ORPHANAGE AND OTHERS v. EMANUEL S. ST. MARTIN AND OTHERS.[1]

June 15, 1934.

No. 29,944.

*Prendergast, Flannery & Young, Joss & Parker,* and *James O. Caulfield,* for appellant Chicago Avenue Boys Orphanage.

*Donohue, Quigley & Donohue,* for appellant St. Benedict's College.

*Kelly & Mangan,* for appellant Little Sisters of the Poor.

*John F. Lord,* for appellant Sisters of St. Joseph of Minneapolis.

*R. V. Gleason,* for appellant Holy Angels Academy.

*Elliott, Coursolle & Kelly,* for respondents.

*STONE, Justice.*

An instrument purporting to be the last will of Emily Coleman, deceased, was admitted to probate as such by the probate court of Hennepin county. Upon appeal to the district court, there was a reversal. Proponents appeal from the order denying their motion for amended findings or a new trial.

[1]Reported in 255 N. W. 481.

Several grounds are assigned for the decision below. It will suffice to examine one which alone requires affirmance.

While the certificate of attestation carries a presumption of due execution, it yet remains a question of fact whether the will was executed in the manner required by law. Lott v. Lott, 174 Minn. 13, 20, 218 N. W. 447. In this case that issue was decided in the negative upon such evidence in support that we cannot reverse.

The instrument in question appears to have been executed October 17, 1931, when Mrs. Coleman was a patient in a convalescent home in Minneapolis. The attesting witnesses were two ladies, both of whom testified that, while they did sign the paper, they did not know what they were signing, as no one told them anything except that they were wanted to "sign some papers"; but nothing was said about a will. They were simply told where to "put my signature" and acted accordingly. They did not see Mrs. Coleman sign anything. One of them testified: "I didn't know there was anything going on like [signing a will]"; and the other that "there wasn't anything mentioned about a will." That is sufficient reference to the testimony to justify and explain our conclusion that the negative decision of the fact issue of attestation is well sustained.

It is overlate for proponents to invoke the rule that the testimony of the witnesses impeaching their attestation is to be looked upon with disfavor, if not suspicion. Kuehne v. Malach, 286 Ill. 120, 125, 121 N. E. 391; Beck v. Lash, 303 Ill. 549, 136 N. E. 475. Such rules are for the guidance of triers of fact rather than for us. The presumption attending the attesting clause was fairly overcome. The severe criticism directed at witnesses who impeach their own solemn attestation in Beck v. Lash, 303 Ill. 549, 136 N. E. 475, should be aimed in this case at the laymen who procured the attestation of the two ladies without informing them fully of the nature of the transaction. Their testimony bears all the marks of candor, and they are not to be criticized now for telling the truth—as it was considered below they did.

The fatal defect in the case for proponents is their failure to prove signing by the testatrix and attestation by two witnesses as required by 2 Mason Minn. St. 1927, § 8735, a statute which requires

compliance within the limits of "reasonable strictness." 6 Dunnell, Minn. Dig. (2 ed.) § 10214; Tobin v. Haack, 79 Minn. 101, 81 N. W. 758; Lott v. Lott, 174 Minn. 13, 218 N. W. 447. The will in question may have been signed but was not subscribed. Signing is enough. In re Estate of Cravens, 177 Minn. 437, 225 N. W. 398. But if there was a signature, it was neither in the presence of the subscribing witnesses nor acknowledged as such to them. Kroschel v. Drusch, 138 Minn. 322, 164 N. W. 1023; Nunn v. Ehlert, 218 Mass. 471, 106 N. E. 163, L. R. A. 1915B, 87.

Order affirmed.