## SOPHIA JOHNSON AND OTHERS v. BRENDA GRYTING HELTNE AND OTHERS.

214 N. W. 2d 224.

January 11, 1974—No. 43991.

*John N. Franta,* for appellants.
*Earle F. Tighe,* for respondents.

Heard before Knutson, C. J., and Rogosheske, MacLaughlin, and Yetka, JJ., and considered en banc.

MACLAUGHLIN, JUSTICE.

This is a contest over the will of decedent, Oscar C. Johnson. The probate court of Redwood County allowed the will and admitted it to probate. The contestants appealed to the district court which, after hearing evidence from the proponents, granted contestants' motion for a directed verdict setting aside the admission of the will to probate. We granted the proponents' petition for discretionary review. The sole issue on appeal is whether the will was properly executed. We reverse the trial court and remand for a new trial.

The last will and testament of Oscar C. Johnson was allegedly executed on September 25, 1968, on the premises of the Gryting implement business in Belview, Minnesota. The will was prepared by Attorney Wayne R. Farnberg. It bears the signature of Oscar C. Johnson as testator, and the signatures of Oscar B. Sjaastad, Harley J. Aamoth, and Wayne R. Farnberg as witnesses. The will contains an attestation clause which states that the will was signed by the testator and subscribed by the witnesses at the request of the testator and in his presence and in the presence of each other. There is no dispute as to the genuineness of the signatures on the will. The dispute centers around the order in which those signatures were placed on the will. Contestants allege that the testator's signature had not been affixed to the will at the time it was subscribed by the witnesses.

Witness Farnberg testified that, in addition to himself, the testator, Aamoth, and Sjaastad were all present at the time the will was executed. Farnberg testified that, as the testator's attorney, he initially had Johnson sign the first page of the will on the signature line, and he then turned the two-page will a quarter turn and Johnson signed in the margin of the second page.[1] Farnberg testified he then carried the will to a counter some 15 to 20 feet away from the testator where, in Johnson's presence, Sjaastad, Aamoth, and Farnberg signed on the second page as subscribing witnesses. There is no testimony that the decedent indicated to them that the instrument was his will nor is there any evidence that the attestation clause was read by the witnesses nor that it had been read to them.[2]

---

[1] The second page of the will contains only a part of the attestation clause and the signatures of Johnson and the three witnesses.

[2] In In re Estate of Murphy, 269 Minn. 393, 402, 131 N. W. 2d 220, 226 (1964), we stated as follows: "* * * [O]ur decisions clearly indicate that the witnesses need not be made aware that the instrument is a will, nor observe the testator signing the instrument, nor attest his signature by signing in the presence of each other. All that is required as a minimum is that the testator either sign the instrument in the presence of the witnesses or declare to each that the signature appearing was made

Witness Sjaastad, although he admittedly signed the will as a witness, testified that he was uncertain whether Oscar Johnson had signed the will in his presence or whether, indeed, Johnson's signature was even on the will when it was witnessed by Sjaastad. On direct examination Sjaastad said he could not recall if he saw Johnson sign on the bottom of page 1 and could not remember whether he saw Johnson sign on the margin of the second page. He also testified he could not recall if Johnson's signature was on the will when he signed it as a witness. Upon cross-examination Sjaastad testified that his recollection was that his signature was the only one on the will at the time he signed it.

Witness Aamoth testified that he did not see the testator sign either page of the will and that Johnson's signature was not on the will at the time Aamoth signed as a witness.

The proponents called Lowell Gryting as a witness. Gryting is the son of the owner of Gryting Implement and is a brother of the sole beneficiary under the will. Gryting testified he was on the premises of Gryting Implement on September 25, 1968, and observed the execution of the will. The contestants objected to testimony from Gryting concerning the execution of the will. The trial court sustained the objection on the ground that such testimony could not be used in support of the will or in substitution for the testimony of the subscribing witnesses. However, the court allowed the proponents to proceed with the testimony of Gryting in the form of an offer of proof. The offer of proof disclosed that Gryting's testimony would support that of Farnberg in nearly all respects, specifically relating that the testator had signed the will prior to the witnesses and in the presence of the witnesses and that the witnesses had subscribed the will in the testator's presence. This evidence, however, was not allowed or considered by the trial court.

Judge Donald L. Crooks of the county court also testified, and the minutes of the probate court for the date on which the will

by him and that the witnesses attest such signature by signing the instrument in the presence of the testator."

was presented for probate were admitted into evidence. The minutes, which were recorded personally by Judge Crooks, showed that on February 3, 1971, Harley Aamoth and Wayne Farnberg were both sworn and proved up the will of Oscar C. Johnson. However, the order in the probate file, admitting the will and signed by Judge Crooks, shows only Farnberg as being sworn to testify and makes no mention of Aamoth. Judge Crooks testified that he did not have any personal recollection of the testimony given on the date the will was presented for admission to probate.

The statutory requirements for the execution of a will are contained in Minn. St. 525.18, subd. 1:

"Every person of sound mind, not a minor, may dispose of his estate, or any part thereof, or any right or interest therein, by his last will in writing, signed by him or by some person in his presence and by his express direction, and attested and subscribed in his presence by two or more competent witnesses."

We have frequently held that when a will contains an attestation clause regular in form, and the signatures of the testator and the witnesses are genuine, the will is presumed to have been duly executed and the contestant has the burden of proving that it was not properly executed. In re Estate of Murphy, 269 Minn. 393, 131 N. W. 2d 220 (1964); In re Estate of Holden, 261 Minn. 527, 113 N. W. 2d 87 (1962) ; In re Estate of Coleman, 192 Minn. 86, 255 N. W. 481 (1934); Lott v. Lott, 174 Minn. 13, 218 N. W. 447 (1928); Baxter v. Baxter, 136 Minn. 59, 161 N. W. 261 (1917); Hennes v. Huston, 81 Minn. 30, 83 N. W. 439 (1900). See, Annotation, 40 A. L. R. 2d 1223.

However, even though such a will carries with it a presumption of due execution, it is still a question of fact whether the will was executed in the manner required by law. In re Estate of Coleman, *supra.*

In presenting evidence regarding the execution of a will, neither party is limited to the testimony of the subscribing witnesses and may, in fact, offer other evidence to overcome the adverse

testimony of the subscribing witnesses. Baxter v. Baxter, *supra*; Lott v. Lott, *supra*; Madson v. Christenson, 128 Minn. 17, 150 N. W. 213 (1914).

In Baxter, we said the fact that subscribing witnesses to a will could not recall the circumstances surrounding their signing of the will does not require the conclusion that the will was not properly executed. We pointed out that the "jury had a right to supply the missing links from other testimony, and from the inferences connected with the document itself and the attestation clause * * *." 136 Minn. 61, 161 N. W. 262. Similarly, in Madson we said (128 Minn. 19, 150 N. W. 214):

"* * * As said by the Michigan court in Abbott v. Abbott, 41 Mich. 540, 2 N. W. 810:

" 'We know of no rule of law which makes the probate of a will depend upon the recollection, or even the veracity of a subscribing witness. The law, for wise and obvious reasons, requires such instruments to be executed and attested with such precautions as will usually guard against fraud. But if the forgetfulness or falsehood of a subscribing witness can invalidate a will, it would be easy in many cases to use such artifices or corruption as would render the best will nugatory. Their evidence is not conclusive either way, nor does the law presume that they are either more or less truthful than others.'

"The question to be determined is whether the will was in fact executed in the manner prescribed by statute. This is a question of fact, and must be determined from all the evidence in the case, not from the testimony of the subscribing witnesses only. If the evidence, taken as a whole, establishes, satisfactorily, that the will was properly executed, its validity should be upheld, even against the testimony of one, or both, of the subscribing witnesses."

It seems clear that the trial court erred in rejecting the evidence of Lowell Gryting. While his testimony of the facts surrounding the execution of the will would not necessarily be determinative, it should have been received and accepted for whatever

it was worth in the consideration of whether the will was properly executed. Witness Farnberg was certain in his testimony that the will was properly executed. Witness Sjaastad was simply unable to recall the circumstances of the execution, and witness Aamoth testified that the testator had not signed the will at the time Aamoth subscribed his name to it. Therefore, the testimony of Lowell Gryting concerning the will's execution was relevant and competent evidence that should have been admitted, and its rejection was reversible error.

At the time of contestants' motion for a directed verdict, the trial court inquired whether contestants wished to proceed with their evidence before he ruled on the motion. The contestants responded that they did not wish to proceed until the court had ruled. Because the court then dismissed the case, the contestants did not offer intended evidence as to undue influence and other allegations involving the validity of the will. We therefore reverse and remand for a full trial on the merits.

Reversed and remanded.

MR. CHIEF JUSTICE SHERAN, not having been a member of this court at the time of the argument and submission, took no part in the consideration or decision of this case.

